## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Rep. Robert "Renny" Cushing, individually and
in his capacity as Minority Leader of the NH
House of Representatives
Rep.  David Cote
Rep. Kendall Snow
Rep. Katherine Rogers
Rep. Paul Berch
Rep. Diane Langley
Rep. Charlotte DiLorenzo
New Hampshire Democratic Party

V

Rep Sherman Packard
Speaker of the NH House of Representatives
(in his official capacity only)

Civil Action No:

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Robert "Renny" Cushing, David Cote, Kenneth Snow, Katherine Rogers, Paul

Berch, Diane Langley, Charlotte DiLorenzo (collectively, "Individual Plaintiffs"), Robert

"Renny" Cushing, in his capacity as Minority Leader of the NH House of Representative, as well

as the New Hampshire Democratic Party ("NHPD") complain against Sherman Packard

("Speaker") ("Defendant") for violations of the Section of 504 of Rehabilitation Act (29 U.S.C. §

794) ("Section 504"), Title II of Americans with Disabilities Act (42 U.S.C. §§ 12131 - 12134)

("Title II" or "ADA"), the Fourteenth Amendment to the United States Constitution, and Part

One Article 11 of the New Hampshire Constitution.

2.      Each of Individual Plaintiffs was elected as a Democrat to the New Hampshire

House of Representatives ("House") in the 2020 General Election. Each is the democratically

chosen representative of thousands of New Hampshire citizens performing the absolute core function of a representative democracy.

3.      Each Individual Plaintiff suffers from one or more medical conditions and disabilities that render them extremely vulnerable to a potentially deadly infection from the COVID-19 virus such that in-person attendance at sessions of the House is impossible without subjecting them to extreme pain and suffering, as well as a serious threat to their health and their lives.

4.      Each Individual Plaintiff has made a request for the reasonable accommodation of being allowed to attend remotely and take part in the legislative process of the House. *See*, Appendix A. (Minority Leader Cushing did not make a specific written request for himself, as he felt obligated by his position to attend whenever possible.  He did, however, make numerous requests for a remote attendance accommodation for all House members and he specifically informed Defendant of the critical health issues he would face if no accommodation were made.) Each of these requests has been denied. Numerous other Democratic representatives have had similar requests denied. Appendix B.

5.      As nominees of the NHDP, each of Individual Plaintiffs ran for office and was elected to reflect and represent the associational values of the NHDP in the House of Representatives.

6.      Plaintiff NHDP represents the associational rights of New Hampshire Democrats.

**PARTIES**

7.      Plaintiff Cushing is the Democratic Minority Leader in the House and lives at 395 Winnacunnett Road, Hampton, NH 03842. He is 68 years old and was diagnosed with Stage 4 prostate cancer in late July 2020, for which he currently is being treated with medicines that have

left him with a compromised immune system. He has only left his home for non-medical reasons four times since being diagnosed – once to attend Veto Day on September 16, 2021, second to review the layout for Organization Day (December 2, 2020), third to attend a session of the House on January 6, 2021, and fourth to visit his mother on February 6, 2021, who was dying from COVID-19.  He was not able to attend Organization Day due to complications from his cancer treatment.  He has been hospitalized four times since August at Massachusetts General Hospital due to infections occasioned by his suppressed immune system. These conditions significantly impact Cushing's major life activities such as immune system, normal cell growth, sleeping, performing manual tasks, and the following bodily functions: digestive, bowel, bladder, respiratory, circulatory, endocrine, and reproductive.  He has made his medical condition known to Defendant and in his role as Minority Leader has requested that remote attendance be authorized for all members of the House, including himself. [1] Because he had been elected by House Democrats to be their candidate for Speaker, he reluctantly attended the session of the House on January 6, 2021. In doing so, he needed the assistance of another person with whom he had to spend the entire day in the confined space of a car and be exposed to multiple potentially lethal interactions with others. In-person attendance presents a clear life-threatening danger to Plaintiff Cushing.

8.      Plaintiff Cote is the Deputy Minority Leader of the House. He is 60 years old and lives at 96 West Hollis St, Nashua, NH 03060. He has suffered from cerebral palsy since birth, so must wear leg braces for stability and uses crutches to walk. He does not drive. In 2018 he had a heart attack which necessitated the implantation of four stents. He was subsequently diagnosed

---

[1] Kevin Landrigan, "*House Dems plead to allow remote attendance at Jan. 6 session*", New Hampshire Union Leader, December 29, 2020 and updated December 30, 2020
https://www.unionleader.com/news/health/coronavirus/house-dems-plead-to-allow-remote-attendance-at-jan-6-session/article_5b376a9e-eb1f-5b1c-b357-ebc149226b7c.html

with coronary artery disease. Furthermore, Representative Cote suffers from epilepsy and high blood pressure. These conditions are physical impairments which substantially restrict his life activities such as walking, performing manual tasks, and circulatory functions. Since the pandemic, he only leaves his house for medical reasons. As he stated in his accommodation request, sitting in a car for hours with another person will both cause Representative Cote significant discomfort and present an unacceptable risk of death or serious illness. *See*, Appendix A.  As a result of the refusal of Defendant to provide a reasonable accommodation, he was unable to attend the session of the House on January 6, 2021 and will be similarly unable to attend future sessions during the pandemic. Therefore, he is being denied his equal right to serve as a Representative and his constituents are being deprived of their rights to be represented in the House.

9.     Plaintiff Rogers is 65 years old and lives at 804 Alton Woods Drive, Concord NH 03301. She suffers from degenerative joint disease and requires adaptive aids to walk - a walker and cane or a wheelchair depending on how far and long she must walk. Sitting for extended periods of time causes her to suffer extreme pain. She has prescribed pain medication but cannot drive after taking it. These conditions are physical impairments which substantially limit her major life activities such as walking, working, performing manual tasks, and caring for oneself. Her request to attend the session of the House on January 6, 2021 on a remote basis was denied by Defendant. She subsequently engaged a friend to drive with her to the session, thus creating a dangerous situation for both in that they were together in a small unventilated space for 10 hours. Representative Rogers suffered extreme pain during the session despite taking her prescribed pain medication and was on the verge of tears due to the pain throughout the day. Since attending the session on January 6, 2021, she has been seeing a doctor for the severe pain caused by her

4

attendance at the session and expects that she will increase permanently her use of a wheelchair as a direct result of attending the session. All because Defendant refused to accommodate her request for reasonable accommodation by remote attendance.

10.     Plaintiff Snow is 81 years old and lives at 200 Alliance Way, #302, Manchester NH, which is located in Birch Hill, a continuing care senior citizen living facility. Because of the extremely high levels of deaths in such facilities in New Hampshire,[2] Birch Hill requires its residents not to attend any gatherings of over 10 people and has told Plaintiff Snow that there will be severe consequences if that rule is violated. In 2017 he was afflicted with Guillain-Barre Syndrome, which causes temporary paralysis from the chest down. He was hospitalized for three months including 18 days in the Intensive Care Unit and 8 days on a ventilator. Representative Snow has residual symptoms including lung vulnerability and limited mobility. These conditions are physical impairments which substantially limit his major life activities such as breathing, working, and walking, among other things. Because of concerns of exposure to COVID-19 and a need to avoid lengthy quarantine, Representative Snow was not able to attend the last meeting of the House on January 6, 2021 and will not be able to attend any further meetings unless afforded an opportunity to do so remotely.

11.     Plaintiff Berch is 74 years old and lives at 956 River Rd, Westmoreland, NH. He suffers from an extremely critical kidney disease and, upon the successful completion of a series of tests and exams, will be placed on a list awaiting a kidney transplant. Plaintiff Berch suffered a serious heart attack and had triple by-pass graft surgery (CABG); he also suffers from coronary heart disease. These conditions are physical impairments which substantially limit his major life

---

[2] Residents of long-term facilities account for 72% of the deaths from COVID-19 according to the Covid-19 Summary Dashboard, February 13, 2021, NH Department of Health and Human Services Website, https://www.nh.gov/covid19/dashboard/case-summary.htm

activities such as organ functions, working, performing manual tasks, walking and other activities. Any exposure to COVID-19 represents both a direct and imminent threat to his life and will likely remove organ transplant as an option. Accordingly, there is no accommodation short of remote attendance that will enable him to attend House sessions and represent the citizens he was elected to represent. The refusal to allow for remote attendance thus completely disenfranchises the thousands of citizens of his district, including voters who are registered Democrats and/or who tend to vote for Democratic candidates such as Individual Plaintiffs.

12.    Plaintiff Langley is 72 years old and lives at 330 Day Street, Manchester, NH 03104-2866.  She suffers from osteo arthritis and rheumatoid arthritis and requires the use of a power wheelchair.  In addition, she suffers from heart disease and has a compromised immune system that is further complicated by her prescribed medications.  During the last five years, she has been hospitalized once annually, with stays of between 3 to 12 weeks each, as a result of these complications from her medical conditions:  cardiac arrest, cellulitis, and deep vein thrombosis (DVT).  Her most recent hospitalization was in September 2020. These conditions constitute physical impairments that substantially limit her major life activities such as immune system, walking, performing manual tasks, caring for oneself, and working. Due to her multiple medical conditions and their complications, exposure to COVID-19 is a direct and imminent threat to her life.  Plaintiff Langley requested an accommodation to attend the session on December 2, 2020. The only accommodation offered was a special parking spot large enough for her van and access to an indoor restroom.  Rep. Langley did not attend the session, knowing from the previous sessions that a large contingent of Republican attendees would not be wearing masks or observing social distancing protocols.

6

13.     Plaintiff DiLorenzo is 71 years old, is African American, and lives at 193 South Main Street, Apt. 6, Newmarket, NH 03857.  She has been diagnosed with coronary artery disease and Type 2 diabetes.  She had an Ischemic Stroke in 2013, which resulted in limited mobility. Plaintiff DiLorenzo also has asthma, a chronic respiratory disease. These conditions are physical impairments which substantially limit her major life activities, such as breathing, performing manual tasks, and other activities.  In addition, as an African American over the age of 60, Plaintiff DiLorenzo has a substantially increased risk of being infected, being hospitalized, and dying of COVID-19.[3]  Plaintiff DiLorenzo requested an accommodation from Defendant to attend sessions remotely since all of her conditions, make any exposure to COVID-19 a direct and imminent threat to her life and that of her husband, who is 79 years old and suffers from a chronic heart condition. Since her request for accommodation was not granted by Defendant, Plaintiff DiLorenzo attended the session on January 6, 2021.  Due to the car fumes produced by the vast number of vehicles in the UNH parking lot during the session, Plaintiff DiLorenzo suffered an asthma attack and had to leave the session early.

14.     Plaintiff NEW HAMPSHIRE DEMOCRATIC PARTY ("NHDP") is a political party as defined by N.H. RSA 652:11. NHDP's address is 105 N. State Street, Concord, New Hampshire. Raymond Buckley is the duly elected chairman of NHPD and is authorized to act on behalf of NHDP in this matter. NHDP is comprised of New Hampshire citizens, voters, and elected officials who seek to associate; to express their political views; to nominate candidates for elective office who promote the official NHDP platform; to run and vote in fair and open

---

[3] "*COVID-19 Hospitalization and Death by Race/Ethnicity,*" Centers for Disease Control and Prevention Website, updated February 12, 2021 https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html ; *See also*, "*Coronavirus infections by race: What's behind the health disparities,*" Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/coronavirus-infection-by-race/faq-20488802

local, state, and federal elections; and to work to promote the official NHDP platform throughout the State. NHDP nominated each of the Individual Plaintiffs to run as candidates for the House to reflect the associational views of its members. Each of the Individual Plaintiffs is a registered Democrat and the following Individual Plaintiffs are members of the NHDP State Committee, which is the governing body of NHDP: Plaintiff Cushing, Plaintiff Cote, Plaintiff Rogers, Plaintiff Langley, and Plaintiff DiLorenzo.

15.     Defendant is Speaker of the House and is sued here in his official capacity only as leader of the House of Representatives. His office is located at the NH State Capitol, Main St. Concord NH 03301. The House of Representatives is a public entity which conducts the activity of legislative business on behalf of the State of New Hampshire. It has received federal funds from the CARES Act to assist with the conduct of its legislative business.

### JURISDICTION, VENUE AND
### EXHAUSTION OF ADMINISTRATIVE PROCESS

16.     The jurisdiction of this Court is founded upon 28 U.S.C. § 1331, 28 U.S.C. 1343 (a) (3), 28 U.S.C.  § 1367. the Fourteenth Amendment to the United States Constitution, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 701 et. seq.), and Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12131 – 12134).

17.     The Court has personal jurisdiction over Defendant because he is an official of a New Hampshire state governmental entity, conducts business in this District and engaged in unlawful conduct and/or caused the harm at issue in this District.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred in this District and all parties reside and/or do business in this District.

19.     Exhaustion of administrative process is not necessary under Title II of the

Americans with Disabilities Act of 1990. 28 CFR §§ 35.170, 35.178, and 35.190.  Individual

Plaintiffs have filed requests for a reasonable accommodation, which Defendant has denied.

### FACTS

### COVID-19

20.     The spread of COVID-19 has exploded since March 2020 with daily new cases

reported from the NH Department of Health and Human Services increasing from a 7-day

average of about 35 per day throughout the spring, summer and fall to peaks of between 700 and

900 new cases per day in December and January.  As of February 8, 2021, the 7-day average

number of new cases per day in New Hampshire was 370, over ten times more than the rate in

June and September when the House met inside the Whittemore Coliseum on the UNH campus

in Durham. [4]

21.     As of February 13, 2021, New Hampshire had experienced 70,505 confirmed

cases of COVID-19 with 1,130 deaths[5], one of which was Plaintiff Cushing's mother, Marie

Cushing, who died on February 6, 2021.

22.     Recently, "New Hampshire was the only state with an increase for newly

confirmed cases," recording "a hike of 4 percent."[6]

---

[4] *See*, Covid-19 Summary Dashboard, February 13, 2021, NH Department of Health and Human Services Website, https://www.nh.gov/covid19/dashboard/case-summary.htm and Explore the Data: Tracking Covid-19 in New Hampshire, New Hampshire Public Radio website, February 13, 2021, https://www.nhpr.org/post/updated-tracking-covid-19-cases-and-testing-new-hampshire
[5] *Id*.
[6] David Mills, *Here Are the States Where COVID-19 Is Increasing*, Healthline (Jan. 26, 2021), https://www.healthline.com/health-news/here-are-the-states-where-covid-19-is-increasing#Where-cases-are-the-highest.

23.     Accordingly, Governor Christopher Sununu has issued emergency orders to curtail the spread of the virus and the extraordinary danger it poses to our state.[7]

24.     The more infectious coronavirus variant first found in the United Kingdom has been detected in a New Hampshire resident according to State health officials on February 12, 2021.[8]

25.     Both deaths and hospitalizations in New Hampshire from COVID-19 are heavily weighted toward those over the age of 60.  People over 60 account for 71.7% of hospitalizations and 96.9% of deaths.[9]

26.     Largely because it is essentially a volunteer job with compensation of only $100 per year, the average age of House Representatives is approximately 63.[10]

27.     COVID-19 is spread via respiratory droplets, in-person contact, and contaminated surfaces and objects.  Spread of the virus is particularly difficult to prevent because 40 to 45 percent of all those infected are asymptomatic or pre-symptomatic.[11]

28.     Because of the airborne nature of the disease, the risk of transmission is highest in heavily trafficked public locations—especially indoors, where there is prolonged exposure, or when protective measures like mask-wearing and social distancing are absent.[12]   The risk of contagion is greater than ever as more infectious variants of the coronavirus have begun to

---

[7] *See, e.g.*, Exec. Order No. 2021-1, Fifteenth Extension of State of Emergency Declares in Executive Order 2020-04 (Jan. 22, 2021), https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/2021-01.pdf.

[8] Holly Ramer, "*UK virus variant found in New Hampshire for 1st time*," Associated Press, February 12, 2021 https://apnews.com/article/health-new-hampshire-coronavirus-pandemic-bcd1c33b9d5730fc83efdc2d52b496f5

[9] *See*, Covid-19 Summary Dashboard, February 13, 2021, NH Department of Health and Human Services Website, https://www.nh.gov/covid19/dashboard/case-summary.htm

[10] Associated Press, *Getting Out of the House: Masked Legislators Meet in Arena*, U.S. NEWS & WORLD REPORT (June 11, 2020), https://www.usnews.com/news/best-states/new-hampshire/articles/2020-06-11/getting-out-of-the-house-masked-legislators-meet-in-arena.

[11] Oran D P and Topol E J, *Prevalence of Asymptomatic SARS-CoV-2 Infection*, Annals of Internal Medicine (Sept. 1, 2020).

[12] Harvard Medical School, 5 factors to help you gauge where COVID-19 risk is highest (Nov. 2020), https://www.health.harvard.edu/staying-healthy/5-factors-to-help-you-gauge-where-covid-19-risk-is-highest.

spread in the U.S. and abroad.[13]  These risks are further compounded for individuals with a disability who are more likely to develop serious illness or death if they contract the coronavirus.[14]

**Effect of COVID-19 on the Business of the NH House of Representatives**

29.  The House is the largest state legislative body in the nation with 400 members and normally sits in the oldest legislative chamber in the nation – Representatives Hall.

30.  Attendance at committee meetings and sessions is an essential part of the work of a Representative.

31.  In a "non-pandemic" year, there are typically about 20 sessions held in Representatives Hall.  In 2019, there were 23.  In 2020, there were11, eight of which were held before Governor Sununu's State of Emergency Order.  *Supra* note 9.

32.  Since March of 2020, due to concerns about COVID-19, the House has only met 5 times in full session[15] and all sessions have taken place at the University of New Hampshire ("UNH") and been in-person only.[16]

33.  As conditions in the pandemic have worsened since last spring, the locations of the sessions at UNH have changed. The first three took place within the Whittemore Center at UNH, the fourth took place outside on an athletic field, and the fifth took place in a parking lot with the Representatives seated in their cars.

---

[13] *See, e.g.*, Matthew S. Schwartz, *New COVID-19 Variant Spreads To Dozens Of Countries*, NPR (Jan. 2, 2021), https://www.npr.org/sections/coronavirus-live-updates/2021/01/02/952842631/new-covid-19-variant-spreads-to-dozens-of-countries?utm_medium=social&utm_campaign=npr&utm_term=nprnews&utm_source=facebook.com&fbclid=IwAR1vJevkBypgmcswGLpqD25D-HIZ44fDIgUZwiLKsgR5WxEjJj8kJBY5HC8 (reporting the new variant "could be 50% more transmissible than the original strain").

[14] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): People with Disabilities, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html.

[15] June 11, 2020, June 30, 2020, September 16, 2020, December 2, 2020, and January 6, 2021.

[16] Until the Opinion of the Justices of the NH Supreme Court was issued on November 17, 2020, it was not clear that the House could meet remotely under the NH Constitution.

34.     During the House session on June 11, 2020, then Speaker Shurtleff introduced a proposal that would have permitted the late drafting of an amendment to the New Hampshire Constitution "providing that the general court shall have the power and duty to adopt measures necessary for the continuity of government in periods of emergency."[17] The motion failed, with Defendant and all current members of his leadership team voting against it.

35.     In anticipation of planning remote sessions for 2021, then Deputy Speaker Ebel made a motion to ask the New Hampshire Supreme Court on behalf of the House to issue an opinion on this question: "Would holding a session of the New Hampshire House of Representatives remotely, either wholly or in part, whereby a quorum could be determined electronically violate Part II, Article 20 of the New Hampshire Constitution?"  HOUSE JOURNAL Vol. 42, No. 11, September 16, 2020, at pages 6-9.

36.     The motion passed but was strongly opposed by Defendant and all of his current leadership team.

37.     On November 17, 2020, the Supreme Court ruled that the House is permitted to meet, either wholly or in part, remotely under the New Hampshire Constitution.  *Opinion of the Justices*, 173 N.H. ____, ____ (2020), 2020 N.H. LEXIS 196, at *18 (Nov. 17, 2020). [18]

38.     The Democratic leadership had begun planning for remote sessions prior to the General Election on November 3, 2020, on which date the Republicans became the majority party in the House and, thus, in charge of planning the sessions.

---

[17] CACR (N.H. 2020), HOUSE JOURNAL, Vol. 42, No. 9 (June 11, 2020) at pages 7-10. http://gencourt.state.nh.us/house/caljourns/default.aspx.  *See*, also https://legiscan.com/NH/bill/CACR21/2020 (introduced June 8, 2020).
[18] Alternatively, see https://www.courts.state.nh.us/supreme/opinions/2020/2020063OJ.pdf.

39.     Since November 17, 2020, Plaintiff Cushing and others in the Democratic caucus have urged Defendant and other Republican leaders to investigate and plan remote House sessions.[19]

40.     Plaintiff Cushing provided Defendant with a concept for remote meetings involving Zoom sessions, coupled with voting software on December 15, 2020 via email.  *See*, Appendix C.

41.     Zoom had been used for months by the Legislature for committee meetings in 2020.  Zoom and voting software were successfully used by both major party caucuses to elect their leaders.  Zoom has also been used by both parties for full caucus meetings, with approximately 200 people participating.

42.     According to the National Conference of State Legislatures, in 2020 one or both chambers in twenty-four (24) states, the District of Columbia, Guam and the Virgin Islands allowed for remote committee meetings or public meetings, and/or allowed for member participation, voting or proxy voting in floor sessions or committee meetings. [20] In 2021, numerous states have delayed sessions and others are meeting remotely, including Vermont. [21]

43.     According to a memo from NCLS dated February 8, 2021, in at least 19 states, at least one chamber or both has allowed for remote participation on the floor.  Appendix D.  The process for remote participation varies. In both chambers of Vermont, the Virginia House and the Washington House, all or nearly all, members meet virtually.  Remote participation is allowed when authorized by the presiding officer in Colorado and South Dakota.  In Pennsylvania, the

---

[19] *Supra* note 1.
[20]  *"COVID-19: State Actions Related to Legislative Operations"*, January 26, 2021, NCLS website: https://www.ncsl.org/research/about-state-legislatures/covid-19-state-actions-related-to-legislative-operations.aspx
[21] *See*, Id.  *See*, also, *"Coronavirus and State Legislatures in the News"*, January 27, 2021, NCLS website: https://www.ncsl.org/research/about-state-legislatures/coronavirus-and-state-legislatures-in-the-news.aspx

House uses proxy voting, and the Senate uses technology for web-based video.  *See*, Appendix D.

44.     Plaintiff Cushing and others in the Democratic leadership team have provided information from NCLS periodically to the Speaker, including a memorandum entitled "Remote Voting Sessions: Practical Considerations and How Legislatures are Responding", a guide that NCLS has developed for assisting State legislatures in setting up remote participation.  Appendix E.

45.     On February 1, 2021, Plaintiff Cushing, Defendant, Plaintiff Cote and others met remotely to discuss the logistics for the upcoming sessions.  Notwithstanding being in the majority for two months, Defendant did not have any solid proposals or information to provide to Plaintiffs about remote participation.  Clearly no real effort had been made by Defendant to develop options for remote participation.  Nonetheless, Defendant asserted that while he was personally opposed to remote participation at sessions, he would be willing to review a plan.

46.     Four days later, Plaintiffs learned in House Calendar No. 10 that Defendant had decided that the House would meet indoors at an undisclosed 55,000 square foot sports facility on February 24 and 25, 2021 and that all members would be "obligated to meet in-person".  N.H.H.R. Calendar #43-10 (Feb. 5, 2021)[22]

47.     No information about the facility's HVAC or COVID-19 health guidelines were provided. *Id*.

48.     The name and location of the sports facility was provided in the most recent House Calendar No. 11 – the NH Sportsplex in Bedford – but no details about COVID-19 health guidelines were provided.  Defendant also stated, "We continue to research if a reasonable

---

[22] House Calendars are available at http://www.gencourt.state.nh.us/house/caljourns/default.aspx.

remote solution exists that will not compromise the operation of the 400 member House of Representatives.  A solution that would meet our unique needs has not been identified." N.H.H.R. Calendar #43-11 (February 12, 2021).

49.      In his initial announcement about the sessions on February 24 and 25, Defendant stated that the House cannot meet remotely because it is not permitted to do so under the House Rules.[23]  This reasoning is seriously flawed and disingenuous.  It is flawed because, as noted above, the Supreme Court has ruled that the House is permitted to meet, either wholly or in part, remotely under the New Hampshire Constitution.  *Opinion of the Justices*, 173 N.H. ____, ____, 2020 N.H. LEXIS 196, at *18 (Nov. 17, 2020).  No rule is necessary.  The New Hampshire Senate has been meeting remotely without anything in the Senate Rules explicitly allowing it, relying on the Governor's Emergency Order Number 12, pursuant to Executive Order 2020-04 and its extensions.  SENATE JOURNAL 2, January 6, 2021, at page 25.[24]

50.      It is disingenuous because Defendant and others in his party have consistently voted against allowing the House Rules to be amended to permit meeting remotely, and Defendant and his leadership team have not undertaken serious efforts to research a remote option for sessions.

51.      At the Organization Day session of the House on December 2, 2020, Representative Bouldin moved to amend House Rule 65 to allow for remote attendance at Committee meetings and House sessions.  Defendant spoke against the amendment.  The amendment failed to pass with the vote along party lines.  House Record, Vol. 43, No.1, Wednesday, December 2, 2020 at pages 9-10.

---

[23] N.H.H.R Calendar #43-10 (Feb. 5, 2021) at page 1.
[24] Senate Journals are available at http://gencourt.state.nh.us/Senate/calendars_journals/html. *See*, also Senate Calendar No. 10A, February 4, 2021 at page 2 announcing the Senate will meet in remote session on Thursday, February 11, 2021.

52.     On December 16, 2020, the Rules Committee considered an amendment to Rule 110 explicitly permitting Defendant to convene session remotely.  Defendant and the other Republican members of the Rules Committee voted against the amendment.

53.     Once more, Plaintiffs made a motion at the session on January 6, 2021 that would allow Defendant to convene session remotely.  And, again, Defendant and his caucus opposed the motion, which was defeated along party lines.

54.     Plaintiff Cushing made another request for remote participation for himself and others in a letter that he sent to Defendant on February 9, 2021.  *See*, Appendix F.

55.     Defendant responded in the negative in a letter dated February 12, 2021, again citing the lack of a House Rule allowing for remote participation.  *See*, Appendix G.

56.     The following day, Plaintiff Cushing sent Defendant another proposal for remote participation for the 25-30 representatives with disabilities.  *See*, Appendix H.

## Accommodation is Necessary

57.     To do their business as Representatives, Plaintiffs must be able to attend both sessions and committee meetings.

58.     The House committees met remotely in 2020; remote attendance at committees has been permitted by Defendant in 2021.

59.     In a recent Union Leader article, Defendant admitted that he faces a dual obligation regarding remote sessions.  He is leading a Republican majority whose members are eager to return to the State House in person and about 60 of whom refuse to wear masks or follow COVID-19 protocols.  At the same time, Defendant has pledged to keep all members of

the House and staff safe.  He stated, "Our duty was to set up something up so that members and staff could be assured that it was safe; there is no greater responsibility I have as their speaker."[25]

60.     In that same article, Defendant stated regarding remote participation by representatives at Committee meetings, "We fully understand there are some with pre-existing conditions or health risks that make is sensible for them to take part via Zoom."[26]  The same is true regarding House sessions.

61.     All Individual Plaintiffs, along with a significant number of their colleagues, have identified disabilities that bring them within the protections of the ADA and Section 504. Each has requested Defendant for reasonable accommodation for remote attendance by themselves or others. These requests have been rejected, often without any reason given.

62.     Plaintiff Cote does not drive, and it is unsafe for him to attend the sessions during the pandemic.

63.     Likewise, Plaintiff Berch is awaiting a kidney transplant and has disabilities that prevent him from attending in person without endangering his life.

64.     Plaintiff Cushing is undergoing cancer treatments that suppress his immune system to such a degree that any exposure to COVID-19 could be deadly.

65.     Plaintiff Snow suffers from several ailments each of which make it impossible to attend in person without endangering his life. Furthermore, the rules of the senior living housing where he resides forbid being in a room with 400 others.

66.     Plaintiff Rogers suffers from a degenerative joint disease and cannot sit for long periods of time without excruciating pain.

---

[25] Kevin Landrigan, "*House soon to bring lawmakers back into committee rooms*," New Hampshire Union Leader, January 15, 2021.  https://www.unionleader.com/news/health/coronavirus/house-soon-to-bring-lawmakers-back-into-committee-rooms/article_455b4fbb-6bdf-5baa-bbd9-96d102384b86.html
[26] *Id*.

67.     Plaintiffs Langley and DiLorenzo have comorbidities which place them at increased risk of severe and life-threatening illness from COVID-19.

68.     All Individual Plaintiffs are over 60 years of age and thus in the age cohort comprising the majority of COVID-19 related deaths. As noted above, people over 60 account for 71.7% of hospitalizations and 96.9% of deaths due to COVID-19. [27]

69.     The physical impairments described in this Complaint establish that all Individual Plaintiffs are qualified individuals with disabilities under the ADA and Section 504.

**Consequences of No Accommodation**

70.     The failure to allow for remote attendance during upcoming House sessions means that all House members will be required to remain inside an enclosed space with many unmasked people for an entire day - an unnecessary and unreasonable risk.  No matter what the distancing or ventilation in the space, the congregation of over 400 people inside, with upwards of 15% of them not wearing masks, violates the consistent advice of health officials. [28]

71.     Dr. Nora Traviss, an associate professor in environmental studies at Keene State College, told the Union Leader that the prudent course would be for the House to follow the Senate's lead and keep all sessions virtual until the vaccine is more widely given.  She also stated, "Convening in person is just not recommended for public health right now.  This is what the public health science is saying and our legislators should be implementing the best practices that are out there."[29]

---

[27] *See*, Covid-19 Summary Dashboard, February 5, 2021, NH Department of Health and Human Services Website, https://www.nh.gov/covid19/dashboard/case-summary.htm
[28] CDC Guidelines, Considerations for Events and Gatherings, Updated January 8, 2021.
https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html ;
NH Governor's Emergency Order 63 Pursuant to Executive Order 2020-04 as extended, An order requiring face coverings for certain scheduled gatherings of 100 or more individuals, dated August 11, 2020
[29] *Supra* note 27.

72.     Meeting inside where masks are not required and where the ventilation system is unknown further present extreme and unjustified danger to all whose age or medical conditions leave them with significantly high levels of risk, such as each of Individual Plaintiffs.

73.     Plaintiffs have lost confidence in the majority members' willingness to comply with COVID-19 guidelines due to several incidents that have occurred since March 2020. The most serious incident occurred when the majority caucus met on November 20, 2020, largely unmasked, even though several members present had active cases of COVID-19. The majority caucus then failed to inform Democratic colleagues of the danger wrought by this mass exposure when the full House held session on December 2, 2020. Plaintiffs only learned of the heightened risk to their health when reading press accounts of the majority's reckless behavior.[30]

74.     It is unknown how many members of the majority caucus contracted COVID-19 as a result of this reckless behavior because that information has been suppressed.  The Republican Speaker of the House, Richard Hinch, died of COVID-19 shortly after being elected, and it is believed he contracted the virus as a result of the aforementioned caucus meeting.[31]  A second Republican leader, Speaker Pro Tem Kim Rice, also contracted COVID-19 shortly after Speaker Hinch's death.[32]

---

[30] "*Gathering of GOP N.H. Lawmakers Leads to Unspecified Number of COVID-19 Cases*", NHPR Staff, New Hampshire Public Radio, December 1, 2020 https://www.nhpr.org/post/gathering-gop-nh-lawmakers-leads-unspecified-number-covid-19-cases#stream/0; Paula Tracy, "*Some GOP Reps Test Positive For COVID-19 Angering Dems Who Weren't Told*," INDepthNH.org, December 1, 2020 http://indepthnh.org/2020/12/01/some-house-gop-members-test-positive-for-covid-19-after-manchester-event/

[31] Jennifer Crompton, "*Late NH House Speaker Dick Hinch died of Covid-19, autopsy shows*", WMUR, December 10, 2020, https://www.wmur.com/article/late-new-hampshire-house-speaker-dick-hinch-covid/34932776; Kevin Landrigan, "NH House Speaker died of COVID-19", Union Leader, December 9, 2020 and updated on December 10, 2020 https://www.unionleader.com/news/politics/state/nh-house-speaker-died-of-covid-19/article_0aa7c18d-9b3e-545a-8135-d17faeb7b94f.html

[32]  Josie Alberson-Grove, "*Another Legislative Leader Announces COVID-19 Diagnosis*", New Hampshire Union Leader, December 12, 2020 https://www.unionleader.com/search/?l=25&s=start_time&sd=desc&f=html&t=article%2Cvideo%2Cyoutube%2Ccollection&app%5B0%5D=editorial&nsa=eedition&q=hinch+covid&o=25

75.     A physician who serves as a Republican Representative publicly attributed the death of Speaker Hinch to the behavior of his fellow Republican members.[33]

76.     Other incidents shaking Plaintiffs' confidence in Defendant's ability to provide a safe environment in an indoor facility occurred during the first three indoor sessions at UNH.  At those sessions, many majority members flouted the COVID-19 rules established by then Speaker Shurtleff, those of UNH and those of the Town of Durham.  Not only did they refuse to wear masks in the Town and on the UNH campus, but also during the third session on September 16, 2020, the unmasked section of the Republican caucus drank beer inside the Whittemore Center.[34]

77.     The fourth session at UNH took place on December 2, 2021 outside in 40-degree weather on a UNH athletic field where 60 masking refusers – 15% of the House - were told to sit apart from the masked Representatives. [35]  At least one unmasked Republican Representative insisted on sitting next to a masked Democrat, who was seeking to distance himself. Speaker Hinch did not require the unmasked Republican Representative to relocate when requested to do so twice by Representative Bouldin.

78.     The most recent meeting of the House took place on January 6, 2021 in a parking lot at UNH during which the individual Representatives were located within their vehicles.

79.     Even there, it was impossible to avoid all contact with others, as various items had to be distributed by staff, microphones were held by staff for speaking outside cars, and staff had

[33] Will Wright and Lucy Tompkins, "*COVID-19 Causes Sudden Death of Top N.H. State Lawmaker*," New York Times, December 10, 2020 https://www.nytimes.com/2020/12/10/us/richard-hinch-nh-covid.html
[34] Daniela Allee, "*State Reps Draw Criticism for Drinking Beer, Not Wearing Masks on UNH Campus*," New Hampshire Public Radio, September 17, 2020 https://www.nhpr.org/post/state-reps-draw-criticism-drinking-beer-not-wearing-masks-unh-campus#stream/0
[35]  Mark Hayward, "*60 state reps have ignored executive order and doffed masks*", New Hampshire Union Leader, January 16, 2021 https://www.unionleader.com/news/health/coronavirus/60-state-reps-have-ignored-executive-order-and-doffed-masks/article_668d5e12-e47d-53fd-8857-a9b58a0c8737.html ; Todd Bookman, *Under Open Skies And At A Distance, Newly Elected State Lawmakers Meet For First Time*, N.H. PUB. RADIO (Dec. 2, 2020), https://www.nhpr.org/post/under-open-skies-and-distance-newly-elected-state-lawmakers-meet-first-time

to troubleshoot defective voting devices.  And, as at all the other UNH sessions, many members of the majority caucus refused to wear masks and socially distance.[36]

80.     Each Individual Plaintiff has requested accommodations from Defendant, including the ability to attend House sessions remotely. *See*, Appendix A and *Supra* note 1.

81.     All Individual Plaintiffs were denied the ability to appear remotely at the sessions held on December 2, 2020 and January 6, 2021; as a result, they had to choose between not attending or attending under circumstances that subjected them to pain and discomfort, as well as an unacceptable risk of disease or death.

82.     Even if Defendant provides better conditions and supports more stringent safety mandates than he has thus far rejected, no relief will come to those who cannot attend large gatherings of any kind whatsoever, such as Plaintiffs and other House members with severely compromised immune systems or other disabilities that make any in-person event physically painful or life-threatening.

83.     In the face of these compelling equities, Defendant has completely refused to make the same accommodation – attendance by remote access - that he has implemented for House committees and his own caucus meetings in response to the disastrous in-person meetings in November 2020.  He has thus unreasonably deprived Individual Plaintiffs of their rights to serve in the capacity to which they were elected and has deprived the constituents of Individual Plaintiffs of any representation.

84.     Aside from the harmful effect the denial of reasonable remote accommodation has upon the Representatives themselves, it has the further deleterious effect of preventing the House from representing the will of the majority of citizens.

---

[36] Ellen Barry, *As State Legislatures Aim to Convene Amid Covid, One Tries a Drive-In*, N.Y. Times (Jan. 7, 2021), https://www.nytimes.com/2021/01/07/us/new-hampshire-drive-in-legislature.html

85.     The margin enjoyed by the majority is slim – only 26.  There are 212 members of the Republican caucus and 186 members of the Democratic caucus. [37]

86.     Many of the most controversial bills before the House are likely to be decided by exceedingly small margins and it is highly probable that in matters critical to the people of the State, the outcomes of votes will be determined by whether the full Democratic caucus can participate.

87.     One hundred thirty (130) Representatives did not attend the December 2, 2020 session, most out of concern for their health, knowing the past violations of the majority caucus members of the mask requirements of UNH and the Town of Durham. [38]

88.     Attendance at the most recent session of the House on January 6, 2021 showed that a far greater number of Democrats were unable to attend than members of the majority party. There were 44 Democratic absences and 10 Republican absences during that session. [39]

89.     The advantage given to the majority party (a net of 34) thus exceeds the overall advantage of the majority (26 seats). Clearly, Defendant and his leadership team have a powerful political incentive to deny disabled Representatives the ability to attend remotely.

90.     The unjustified refusal of Defendant to make reasonable accommodations has deprived Individual Plaintiffs of their right to due process and equal treatment under the law as guaranteed by the Fourteenth Amendment to the United States Constitution and codified by the ADA.

---

[37] New Hampshire Update, Office of the House Clerk, Resignations, Deaths, Special Elections dated January 26, 2021.

[38]  Mark Hayward, "*60 state reps have ignored executive order and doffed masks*," New Hampshire Union Leader, January 16, 2021 https://www.unionleader.com/news/health/coronavirus/60-state-reps-have-ignored-executive-order-and-doffed-masks/article_668d5e12-e47d-53fd-8857-a9b58a0c8737.html

[39] Based on information provided by Office of the House Clerk and reviewed by the staff of the Minority Office.

91.     In addition, all Individual Plaintiffs have been denied equal access to the information and processes required to fulfill the duties of their office, and the citizens they represent therefore have been denied equal representation under the United States Constitution and Part One, Article 11 of the New Hampshire Constitution.

92.     Plaintiffs have further been denied the special protections afforded the elderly and disabled under Article 11 of the New Hampshire Constitution.

93.     Individual Plaintiffs and their constituent voters have been effectively and unnecessarily deprived of their substantive due process rights to representation in the House, as guaranteed by the Fourteenth Amendment of the United States Constitution.

### COUNT I—Americans with Disabilities Act (Title II)

94.     Plaintiffs incorporate all paragraphs herein as if fully restated.

95.     Individual Plaintiffs are qualified individuals with a disability within the meaning of the ADA. Those disabilities make Individual Plaintiffs particularly susceptible to severe complications from COVID-19.

96.     Plaintiffs have requested that they be permitted to participate in session remotely as described above.

97.     The accommodation requested by Plaintiffs would allow them to participate in the activities of the legislature, in which they are eligible (and indeed, entitled) to participate.

98.     Defendant is required to provide reasonable accommodations to disabled persons such as Plaintiffs.

99.     Defendant's failure to provide the reasonable accommodation of remote attendance denies Plaintiffs the opportunity to participate in legislative activities meaningfully and safely.

100.    Defendant's failure to provide the reasonable accommodation of remote attendance denies basic health and safety protection to Individuals Plaintiffs and other similarly situated Representatives and has a disparate impact on Plaintiffs, whose disability place them at greater risk than the general public for serious complications or death from COVID-19.

101.    Accordingly, Individual Plaintiffs have been excluded from participation in or have been denied the benefits of the services, programs, or activities of a public entity on account of their disabilities within the meaning of Title II the ADA.

102.    Although Individual Plaintiffs have sought reasonable modifications to allow them to attend and participate remotely in the proceedings of the House, Defendant has failed to provide these reasonable modifications or offer any other reasonable and effective alternative accommodations.

103.    Defendant's failure to provide for reasonable accommodation to Plaintiffs constitutes discrimination under Title II the ADA.

104.    Defendant's violations of the ADA also constitute violations of the Fourteenth Amendment to the United States Constitution and state constitution, as discussed below.

105.    If Defendant continues to deny Individual Plaintiffs request for reasonable accommodations, Plaintiffs will be immediately and irreparably injured.

106.    As such, the Court should issue declaratory and injunctive relief to enjoin Defendant from present and future violations of the ADA.

107.    The Court should also award attorney's fees to Plaintiffs as authorized by statute.

## COUNT II- Rehabilitation Act (Section 504)

108.    Plaintiffs incorporate all paragraphs herein as if fully restated.

109.    Individual Plaintiffs are qualified individuals with a disability within the meaning of Section 504 of the Rehabilitation Act. Those disabilities make Individual Plaintiffs particularly susceptible to severe complications from COVID-19.

110.    The House is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act in that the House has received approximately $190,000 in federal funds under the CARES Act of 2020 to respond to the needs of the pandemic.

111.    These funds have been used to pay for costs associated with "off-site" meetings of the House at the University of New Hampshire, including for purchasing voting technology.

112.    Plaintiffs have requested that they be allowed to participate in legislative sessions remotely as described above.

113.    The accommodation requested by Plaintiffs would allow them to participate in the activities of the legislature, which they are eligible (and indeed, entitled) to participate in.

114.    Under Section 504, Defendant is required to provide reasonable accommodations to disabled persons such as Plaintiffs.

115.    Defendant's failure to provide the reasonable accommodation of remote attendance denies Plaintiffs the opportunity to meaningfully and safely participate in legislative activities.

116.    Defendant's failure to provide the reasonable accommodation of remote attendance denies basic health and safety protection to Individual Plaintiffs and other similarly situated Representatives.  It also has a disparate impact on Plaintiffs, whose disability place them at greater risk than the general public for serious complications or death from COVID-19.

117.     Accordingly, Plaintiffs have been excluded from participation in or have been denied the benefits of programs or activities receiving federal financial assistance on account of their disabilities within the meaning of Section 504.

118.     Although Individual Plaintiffs have sought reasonable modifications to allow them to attend and participate remotely in the proceedings of the House, Defendant has failed to provide these reasonable modifications or offer any other reasonable and effective alternative accommodations.

119.     Defendant's failure to provide for reasonable accommodation to the Plaintiff constitutes discrimination under Section 504.

120.     Defendant's violations of Section 504 also constitute violations of the Fourteenth Amendment to the United States Constitution and state constitution, as discussed below.

121.     If Defendant continues to deny Individual Plaintiffs request for reasonable accommodations, Plaintiffs will be immediately and irreparably injured.

122.     As such, the Court should issue declaratory and injunctive relief to enjoin Defendant from present and future violations of Section 504.

123.     The Court should also award attorney's fees to Plaintiffs as authorized by statute.

**COUNT III—Fourteenth Amendment to the United States Constitution**

124.     Plaintiffs incorporate all paragraphs herein as if fully restated.

125.     At its core, the Fourteenth Amendment to the United States Constitution guarantees that the citizenship rights of Americans will not be denied either Due Process or Equal Protection of the laws. Critical to these rights is the ability to vote and to participate in government on every level without discrimination.

126.    The refusal of Defendant to implement a simple accommodation of remote attendance has stripped Plaintiffs of their right to vote and to participate in the representative functions to which they have been elected. Their constituents have been and will be totally denied representation in the House of Representatives and all those who share the associational views of the Democratic Party have been denied due process and equal protection of the law. All of these denials are ultimately based upon discrimination that disparately affects Individual Plaintiffs due to their disabilities.

127.    As such, Defendant's conduct and his violations of the ADA and Rehabilitation Act constitute violations of the Fourteenth Amendment and Defendant should be enjoined from the same.

### COUNT IV—Article 11 of the NH Constitution

128.    Plaintiffs incorporate all paragraphs herein as if fully restated.

129.    Part One, Article 11 of the NH Constitution guarantees equal access to representative democracy to all qualified citizens. This guarantee extends to both voters and to those who choose to run for office. Article 11 thus guarantees the equal protection of the law for all residents to be represented by those chosen in fair and free elections. This guarantee would be meaningless if those elected were denied the right to serve.

130.    In particular, Article 11 expressly guarantees these rights to those citizens who are either disabled or elderly.

131.    Each of the Individual Plaintiffs are within both classes of expressly protected citizens. A large number of other members of the House from both political parties are in one or both of these protected categories. For whatever reason, the failure to allow for remote attendance has disparately burdened Democratic members and their constituents as demonstrated

by the significantly larger number who have requested accommodations and who were absent from the most recent session.

132.     The failure of Defendant to authorize remote participation in the House meetings effectively strips disabled citizens such as Individual Plaintiffs of their right to take part in the self-government that is at the heart of our representative democracy.

133.     The failure of Defendant to authorize remote participation in the House sessions results in the removal of those who share the viewpoints of Plaintiffs from equal representation in the House and thus violate the associational rights of Individual Plaintiffs and the NHDP.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court order the following relief:

1.     Declare that pursuant to 28 U.S.C. Sec. 2201 that by failing to grant a reasonable accommodation enabling Plaintiffs and others similarly situated to participate remotely in a safe manner in the sessions of the House, which results in a disparate impact on Plaintiffs, Defendant is in violation of the ADA;

2.     Declare that pursuant to 28 U.S.C. 2201, that by failing to grant a reasonable accommodation enabling Plaintiffs and others similarly situated to participate remotely in a safe manner in the sessions of the House, which results in a disparate impact of Plaintiffs, Defendant is in violation of Section 504 of the Rehabilitation Act.

3.     Declare that Defendant's failure to allow for remote participation of Plaintiffs in sessions of the House constitutes a denial of rights protected by the Fourteenth Amendment and Part One, Article 11 of the New Hampshire Constitution.

4.      Issue injunctive relief, on a preliminary and permanent basis, requiring Defendant to provide remote participation to sessions of the House by Individual Plaintiffs and others similarly situated.

5.      Award Individual Plaintiffs reasonable attorneys' fees, including litigation expenses and costs.

6.      Grant such other and further relief as this Court deems just and proper.

Respectfully Submitted,

REP. ROBERT "RENNY" CUSHING (INDIVIDUALLY AND IN HIS CAPACITY AS MINORITY LEADER OF THE NH HOUSE OF REPRESENTATIVES), REP.  DAVID COTE, REP. KENDALL SNOW, REP. KATHERINE ROGERS, REP. PAUL BERCH, REP. DIANE LANGLEY, REP. CHARLOTTE DILORENZO

By and through their attorneys

Date: February 15, 2021                  _____/s/ Paul Twomey_____
Paul Twomey, Esq., NH Bar No. 2589
P.O. Box 623
Epsom, NH 03234
paultwomey@comcast.net
(603) 568-3254

Date: February 15, 2021                  _____/s/ Israel Piedra_____
Israel F. Piedra, Esq., NH Bar No. 267568
Welts, White & Fontaine, PC
29 Factory Street
Nashua, NH 03060
(603) 883-0797
ipiedra@lawyersnh.com

and

NEW HAMPSHIRE DEMOCRATIC PARTY

By its attorney

Dated: February 15, 2021              */s/ William Christie*
                                      William E. Christie, Esq., N.H. Bar no. 11255
                                      Shaheen & Gordon, PA
                                      107 Storrs Street
                                      PO Box 2703
                                      Concord, NH 03302
                                      (603) 225-7262
                                      wchristie@shaheengordon.com