# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Representative Robert R. Cushing, et al., | \* | |
| | \* | |
| Plaintiffs, | \* | |
| v. | \* | Case No. 1:21-cv-00147-LM |
| | \* | |
| Representative Sherman Packard, et al. | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### Introduction

Six months ago, the First Circuit issued an en banc ruling in this case, comprehensively explaining why absolute legislative immunity barred the plaintiffs' challenge to the enactment and enforcement of a parliamentary rule governing remote participation in floor sessions of the New Hampshire House of Representatives. *See Cushing v. Packard*, 30 F.4th 27 (1st Cir. 2022) (en banc). Undeterred, the plaintiffs have amended their complaint, adding three new defendants, two new claims, and several pages of argument, rhetoric, and innuendo. *See* ECF Doc. No. 44. But none of these additions alter the fact that the plaintiffs seek the same extraordinary relief they have sought since this case first started: a federal-court order supplanting a state rule of parliamentary procedure with one of the plaintiffs' own choosing. The First Circuit has already explained why such an order is incompatible with the protections legislative immunity affords. In the face of the First Circuit's decision, as well as other controlling and highly persuasive authority, the plaintiffs' claims cannot survive. The Court should therefore dismiss the First Amended Complaint.

## Standard of Review

Dismissal is appropriate if the well-pleaded facts, when assumed true, fail to state a claim for relief. *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018). "Well-pleaded facts must be non-conclusory and non-speculative." *Id.* (citation omitted). In resolving a motion to dismiss, a court should "identify[] and disregard[] statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citations, ellipsis, quotation marks, and brackets omitted). A court should likewise disregard "bald conclusions, unrelieved rhetoric, and pejorative epithets." *Viqueira v. First Bank*, 140 F.3d 12, 15 (1st Cir. 1998). A court may, however, consider "documents the authenticity of which are not disputed by the parties"; "official public records"; "documents central to the plaintiffs' claims"; and "documents sufficiently referred to in the complaint." *Ironshore Speciality Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017).

## Background

For the most part, the relevant background is set forth in detail in the First Circuit's en banc decision. *See Cushing*, 30 F.4th at 31–36. Because the parties and this Court are already familiar with that background, and in the interest of brevity, the defendants only summarize it here.

At the time they filed their original complaint, seven of the plaintiffs were members of the New Hampshire House of Representatives who alleged they had preexisting conditions that made them particularly susceptible to severe illness or death should they contract Covid-19. *Id.* at 30. The eighth plaintiff was the New Hampshire Democratic Party. *Id.* The plaintiffs brought claims under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation

Act, the Fourteenth Amendment, and the New Hampshire Constitution. ECF Doc. No. 1 ¶¶ 94–
133. They named the Speaker of the New Hampshire House in his official capacity as a
defendant, and sought a declaration that they were entitled to appear remotely in House floor
sessions and corresponding mandatory injunctive relief. *Id.* ¶ 15 & pp. 28–29.

The plaintiffs also filed an "emergency" motion seeking a preliminary injunction
coterminous with the permanent injunction sought in their complaint. ECF Doc. No. 2. In
response to that motion, the Speaker argued, among other things, that the plaintiffs' claims were
barred by the doctrine of absolute legislative immunity. ECF Doc. No. 17-1 at 3–13. Following
an expedited hearing, this Court issued a narrative order agreeing with the Speaker. *See Cushing
v. Packard*, 560 F. Supp. 3d 541 (D.N.H 2021). The Court concluded that the Speaker "is
immune from plaintiffs' suit challenging his enforcement of a House rule that is closely related
to core legislative functions." *Id.* at 548

The plaintiffs appealed that decision to the First Circuit. After briefing and argument, a
panel vacated this Court's decision, holding that Title II and Section 504 abrogate legislative
immunity. *See Cushing v. Packard*, 994 F.3d 51 (1st Cir. 2021). The Speaker sought rehearing of
that decision en banc, which the full court granted, vacating the panel's decision. *See Cushing*,
30 F.4th at 30. The parties filed additional briefing, and the United States, upon the First
Circuit's invitation, submitted an amicus brief in support of the plaintiffs' position. *See, e.g.*, *id.*
at 37.

Following oral argument, the First Circuit issued a divided en banc decision affirming
this Court's denial of the preliminary injunction. *See generally id.* at 30 (majority opinion); *id.* at
53 (Thompson, J., dissenting). In a decision spanning nearly 23 reporter pages, a three-judge
majority considered and rejected each argument the plaintiffs put forth for why legislative

immunity did not bar their claims. *See id.* at 30–53. The majority concluded that this Court did not err in denying the plaintiffs' motion for a preliminary injunction based that immunity. *Id.* at 53. In the majority's view, the plaintiffs challenged a "quintessentially legislative act" to which "protection of the immunity . . . has been historically afforded." *Id.* (citation and quotation marks omitted).[1]

Following remand, the Speaker moved to dismiss the plaintiffs' original complaint based on the reasoning in the First Circuit's en banc decision. ECF Doc. No. 40. The plaintiffs then moved, with the Speaker's assent, to amend their complaint. ECF Doc. No. 42. The plaintiffs' First Amended Complaint contains only a handful of substantive changes. The plaintiffs name three additional defendants—Paul Smith in his official capacity as Clerk of the New Hampshire House, the New Hampshire House of Representatives, and the State of New Hampshire. *See* ECF Doc. No. 44 ¶¶ 1, 17–19. The plaintiffs also assert two new claims through a single additional count—one under the First Amendment and one under Part I, Article 22 of the New Hampshire Constitution. *See id.* ¶¶ 152–159. The plaintiffs acknowledge that two of the original plaintiffs have passed away since the original complaint was filed, though they do not address the legal significance of these facts. *See id.* ¶¶ 8–9. The plaintiffs also add a few new allegations with respect to developments in the pandemic and New Hampshire House proceedings since their original complaint was filed. *See, e.g.*, *id.* ¶¶ 26–27, 49, 71, 87–88.

The remaining material added to the First Amended Complaint consists of little more than irrelevant legal arguments, "legal conclusions couched as fact," and "unrelieved rhetoric," none of which has bearing on the outcome of this motion. *See Ocasio-Hernandez*, 640 F.3d at 2;

---

[1] The plaintiffs have sought review of the First Circuit's decision in the Supreme Court, and their petition for writ of certiorari remains pending. *See Docket*, Cushing v. Packard, No. 22-178, *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22-178.html.

*Viqueira*, 140 F.3d at 15. For instance, the plaintiffs devote considerable space in their First Amended Complaint to impugning the motives of the defendants for enacting and enforcing the New Hampshire House Rules—and, by extension, Section 786 of the 2020 edition of *Mason's Manual of Legislative Procedure*—even going so far as to imply that the nongovernmental body responsible for publishing the 2020 edition of *Mason's Manual*, the National Conference of State Legislatures, snuck Section 786 into the 2020 edition of *Mason's Manual* for some improper purpose. *See, e.g.*, ECF Doc. No. 44 ¶¶ 32, 36, 37, 39, 40, 42, 43. The plaintiffs also pepper their First Amended Complaint with their views on how New Hampshire parliamentary procedure should operate, based largely on a misapplication of the New Hampshire House Rules, unsourced statements purportedly made by three unnamed persons "associated with the National Conference of State Legislators [sic]," and a misreading of the New Hampshire Supreme Court's opinion in *Opinion of the Justices*, 173 N.H. 689 (2020). *See, e.g.*, ECF Doc. No. 44 ¶ 32–39. The plaintiffs likewise offer conclusory assertions throughout their First Amended Complaint that they are not challenging a legislative act, *see, e.g.*, *id.* ¶¶ 16, 17, 18, 20, even though the First Circuit already definitively resolved that question against them, *see Cushing*, 30 F.4th at 49–51. The plaintiffs further imply that the defendants are somehow responsible for two of the original plaintiffs' deaths, *see, e.g.*, ECF Doc. No. 44 ¶¶ 8, 10, though they offer no shred of support for this remarkable contention.

In the end, though, the plaintiffs seek relief in their First Amended Complaint that is functionally identical to the relief they sought in their original complaint and their motion for a preliminary injunction. Now, as before, they request a declaration that the defendants are violating their rights under federal and state law by not allowing them to participate in House floor sessions remotely and a corresponding mandatory injunction requiring the defendants to

allow remote participation. *Compare* ECF Doc. No. 44 at 40–41 *with* ECF Doc. No. 1 at 28–29

& ECF Doc. No. 2 at 4. The First Circuit has already comprehensively explained why the

plaintiffs cannot obtain that relief. *See Cushing*, 30 F.4th at 30–53. In light of the First Circuit's

decision, and other controlling and highly persuasive authority, the Court should dismiss the

First Amended Complaint in its entirety.

**Argument**

I.      **Absolute legislative immunity bars the plaintiffs' federal claims.**

In its en banc decision, the First Circuit systematically rejected each of the plaintiffs'

arguments for why absolute legislative immunity did not bar their claims. *See Cushing*, 30 F.4th

at 36–53. The court rejected, for example, the plaintiffs' contention that they had really intended

to bring their Title II and Section 504 claims against the State itself, rather than the Speaker in

his official capacity, *see id.* at 37–43, while at the same time observing that the plaintiffs' claims

would face problems, if not fail outright, even if they had been asserted against institutions rather

than officials, *see, e.g.*, *id.* at 37 n.9, 40 n.12 & n.13, 42, 43. The court also rejected the

plaintiffs' contentions that Title II and Section 504 abrogate legislative immunity, *id.* at 43–49,

that the acts they challenged were not legislative, *id.* at 49–50, and that New Hampshire law

should govern the inquiry based on notions of "comity," *id.* at 50. And despite acknowledging

that the issue was "barely developed in the District Court or before the panel," the court also

provided a lengthy explanation for why the "potential limit on immunity discussed in *Kilbourn v.*

*Thompson*, 103 U.S. 168 (1880)," did not save the plaintiffs' claims. *See id.* at 50–53.

To avoid the First Circuit's decision, the plaintiffs must overcome two related doctrines:

the law-of-the-case doctrine and the law-of-the-circuit doctrine. The law-of-the-case doctrine

provides that "a legal decision made at one stage of a civil or criminal case, unchallenged in a

- 6 -

subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation." *United States v. Matthews*, 643 F.3d 9, 12 (1st Cir. 2011) (citation and quotation marks omitted). Among other things, the law-of-the-case doctrine "bars a party from resurrecting issues that either were, or could have been, decided on an earlier appeal." *Id.* at 12–13 (same omissions). A decision on a preliminary-injunction motion is binding under the law-of-the-case doctrine "when the record before the [court] was sufficiently developed and the facts necessary to shape the proper legal matrix were sufficiently clear." *Naser Jewelers, Inc. v. City of Concord, N.H.*, 538 F.3d 17, 20 (1st Cir. 2008) (cleaned up).

The law-of-the-circuit doctrine is "a close cousin of the law of the case doctrine." *United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2011). "The law of the circuit doctrine requires [the First Circuit] (and, by extension, all lower courts within this circuit) to respect, in the absence of supervening authority, the decision of prior panels on the same issue." *Nevow v. Moneypenny Holdings, LLC*, 842 F.3d 113, 125 (1st Cir. 2016) (citation omitted). "Once [the First Circuit] has decided a legal question and articulated [its] reasoning, there is usually no need . . . to repastinate the same soil when another case presents essentially the same legal question." *Id.* (citation and quotation marks omitted). The law-of-the-circuit doctrine gives way only when an appellate decision "is undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling" or "in those rare instances in which authority that postdates the original decision, though not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *United States v. Lewis*, 963 F.3d 16, 23 (1st Cir. 2020) (cleaned up).

The plaintiffs make several apparent attempts to evade the First Circuit's en banc decision through the material added to their First Amended Complaint. All are unavailing, either because they run headlong into the First Circuit's decision itself or because they are foreclosed by the First Circuit's reasoning or other controlling or highly persuasive authority. The defendants address each attempt in turn.

**New defendants.** The plaintiffs first attempt to avoid the First Circuit's decision by naming three new defendants in their First Amended Complaint—the Clerk of the New Hampshire House, the House itself, and the State of New Hampshire—seemingly on the premise that these defendants, unlike the Speaker, are precluded from invoking legislative immunity as a defense. The First Circuit's en banc opinion expressly forecloses such an argument with respect to the House itself, as the court explicitly stated "that a legislative body may itself assert legislative immunity." *Cushing*, 30 F.4th at 42. The court derived this statement from the Supreme Court's decision in *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719 (1980), another precedent binding on this Court. Any contention that the House, as a legislative body, cannot invoke legislative immunity accordingly lacks merit.

First Circuit precedent likewise makes clear that the Clerk, though not a legislator, enjoys legislative immunity for acts that are legislative in nature. *See Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622 (1st Cir. 1995). In *Harwood*, the plaintiffs sued both the Speaker of the Rhode Island House and its Doorkeeper to enjoin them from enforcing a rule that "purport[ed] to ban both lobbyists and lobbying from the floor of the House while the House [was] in session." *Id.* at 625. The First Circuit concluded that both defendants were entitled to legislative immunity, reasoning that the doctrine "must protect legislators and *legislative aides* who do no more than carry out the will of the body by enforcing [a legislative] rule as part of their official duties." *Id.*

at 631 (emphasis added). The court specifically "reject[ed] the plaintiffs' attempts to differentiate the Speaker from the doorkeeper, based on the fact that the latter is not a legislator," noting that "[t]he case law teaches that, as long as an aide's conduct would be covered by legislative immunity were the same conduct performed by the legislator himself, the aid shares the immunity." *Id.* at 631 n.10 (collecting cases). The plaintiffs in this case did not ask the First Circuit to overrule *Harwood* when the court reheard their appeal en banc. *Cf. Cushing*, 30 F.4th at 50 (citing *Harwood* approvingly for a different premise). *Harwood* therefore remains the law of the circuit and controls here with respect to the plaintiffs' claims against the Clerk. *See Nevow*, 842 F.3d at 125.[2]

The court in *Harwood* relied on prior decisions to support its conclusion that legislative immunity extends to legislative employees when performing legislative functions. *See* 69 F.3d at 631 n.10. More recent case law confirms that this conclusion remains sound. In *Bogan v. Scott-Harris*, the Supreme Court emphasized that the applicability of legislative immunity turns on whether the act in question is legislative in nature, not the status of the actor as a legislator. *See* 523 U.S. 44, 55 (1998). In *Reeder v. Madigan*, the Seventh Circuit concluded that two legislative press secretaries were entitled to legislative immunity, likewise focusing on the nature of the act in question and not who was performing it. *See* 780 F.3d 799, 803–04 (7th Cir. 2015). And just last year, the D.C. Circuit emphasized that "[t]he pivotal distinction . . . is between legislative acts and non-legislative acts" when concluding that Speaker Pelosi, the Clerk of the House, and the House Sergeant-at-Arms were entitled to immunity under the Speech or Debate Clause on claims challenging the enactment and enforcement of proxy voting rules. *McCarthy v. Pelosi*, 5

---

[2] It bears emphasizing that the Clerk is a constitutional officer elected by members of the House pursuant to Part II, Article 22 of the New Hampshire Constitution and N.H. Revised Statutes Annotated § 14:2-b. The defendants have identified no precedent that would suggest this fact makes him *less* entitled to legislative immunity than an ordinary legislative employee.

F.4th 34, 41 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 897 (2022). These decisions demonstrate that there is no "sound reason for believing that the [*Harwood*] panel, in light of fresh developments, would change its collective mind" on whether legislative aides are entitled to immunity for legislative acts. *Lewis*, 963 F.3d at 23.

The plaintiffs' efforts to avoid legislative immunity by naming the State of New Hampshire as a defendant fail for similar reasons. Again, "[a]bsolute legislative immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 29 (1st Cir. 1996) (citations and quotation marks omitted; emphasis in original). If arms of the state such as state courts and state legislatures may invoke legislative immunity for challenges to acts that are legislative in nature, *see Consumers Union*, 446 U.S. at 733; *Cushing*, 30 F.4th at 42, then it is hard to conceive why the State itself could not likewise do so. To conclude otherwise would all but ignore the Supreme Court's teaching, previously observed by this Court, that "a basic premise of legislative immunity is that it applies to acts, not actors." *Cushing v. Packard*, 560 F. Supp. 3d 541, 550 (D.N.H. 2021) (citing *Bogan*, 523 U.S. at 54–55). The Supreme Court has rejected this type of "empty formalism" in the context of other immunities. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). Legislative immunity should similarly not be "sacrificed to elementary mechanics of captions and pleadings." *Id.*

It is true enough that the First Circuit declined to reach this issue in its en banc decision. *See Cushing*, 30 F.4th at 37. But this in no way advances the plaintiffs' cause. The First Circuit's decision is replete with skepticism that the State of New Hampshire, standing alone, could be a proper defendant in this case at all. The court noted, for instance, "the seeming complexities that would appear to arise from naming the State alone as the defendant, given that the injunctive

relief sought is directed solely against the Speaker." *Id.* at 37 n.9. The court likewise noted that "the injunctive relief that the plaintiffs seek is, on their own account, relief that must run against a legislator directly to be effective." *Id.* at 49. The court further observed that the plaintiffs did not "cite any authority to support the contention that a suit that merely names the State but then seeks . . . equitable relief against a state legislative officer and no other actor or entity is not a suit to which legislative immunity applies." *Id.* The court noted this was not "a case in which the entity of which the officer is sued is a part had no greater separate identity from the State . . . than many executive departments do," but rather one "in which the officer named in the [original] complaint serves in one of the two houses of a coordinate branch of state government and thus is not, for purposes of enforcing [Title II or Section 504] obviously 'the State'—insofar as the officer named is a stand-in for any entity—rather than either the House or the state legislature as a whole." *Id.* at 42 n.14 (citation and first set of internal quotation marks omitted). The court also noted that, "had the plaintiffs named the State in their [original] complaint, a question would then have arisen in relation to the relief sought as to whether the right entity had been named, given that if the House were the proper entity (insofar as an officer suit was not being brought) legislative immunity would have remained as a viable defense." *Id.* at 42 (citing *Consumers Union*, 446 U.S. at 732).

These observations reflect an important reality: "[u]nlike the English sovereign perhaps, an American State can only act through its officials." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984); *see also Pindexter v. Greenhow*, 114 U.S. 270, 288 (1885) ("The state is a political corporate body, can only act through its agents, and can command only by laws."). To their credit, the plaintiffs appear to acknowledge this reality in their First Amended Complaint. Rather than focus any of their arguments and allegations on the

State of New Hampshire in the abstract, they contend that members of the House of

Representatives and, ultimately, the Speaker and the Clerk have violated their rights. *See, e.g.*,

ECF Doc. No. 44. ¶¶ 16–18, 41–43, 68–79, 82–84, 90–107. And, as the First Circuit predicted,

they seek relief that could only be implemented through the acts of government officials.

*Cushing*, 30 F.4th 49.

      The plaintiffs must thus pick their poison. If their claims against the State of New

Hampshire implicate acts that are legislative in nature, then there is no principled reason why the

State itself cannot invoke legislative immunity to the same extent as any of the other defendants.

This Court recognized as much at the earliest stages of this litigation. *See Cushing*, 560 Supp. 3d

at 550 ("[E]ven if the Speaker in this official-capacity action is properly characterized as the

state, that would not preclude a claim of legislative immunity under binding Supreme Court

precedent."). If the plaintiffs instead intend to somehow untether the State of New Hampshire as

a defendant from the acts they challenge and the relief they seek, then they have only confirmed

the First Circuit's suggestion that the State is not a proper defendant in this case at all. Either

way, the addition of the State of New Hampshire as a defendant in this case, like the addition of

the House and the Clerk, does not save the plaintiffs' claims from dismissal on legislative-

immunity grounds.[3]

      **Legislative nature of challenged conduct.** The plaintiffs also suggest throughout their

First Amended Complaint that the conduct they challenge is not legislative in nature. Once again,

the First Circuit's en banc decision precludes this line of argument. In that decision, the First

Circuit rejected "the plaintiffs' contention that legislative immunity is no obstacle to their

---

[3] The First Circuit also recognized that the plaintiffs' claims against the State of New Hampshire implicate Eleventh Amendment immunity. *See, e.g.*, *Cushing*, 30 F.4th at 40 n.13. Though the defendants do not press an Eleventh Amendment argument now, they expressly reserve the right to do so if this case survives dismissal on legislative-immunity grounds.

obtaining an emergency injunction because their federal claims do not seek to hold the Speaker liable for any 'legislative act.'" *Cushing*, 30 F.4th at 49. The court observed, among other things, that "voting by Members itself constitutes a legislative act, and the plaintiffs request an accommodation with respect to the House rules that purport to bar the remote participation that they seek." *Id.* (citation and quotation marks omitted). The court declined to find "a material difference between [the plaintiffs'] requested injunctive relief and a request for relief that would seek to dictate the setting of the rules themselves." *Id.* (citing *Consumers Union*, 446 U.S. 726, 728–29). The court also rejected the plaintiffs' contention that they challenged activities that were "merely casually or incidentally related to legislative affairs," observing that "determinations about the procedures by which House members may cast votes are not so easily characterized," that the plaintiffs had not "identif[ied] any authority that would support a 'casual' or 'incidental' characterization," and that the D.C. Circuit's decision in *McCarthy* took the opposite view. *Id.* at 49–50 (citations and first set of internal quotation marks omitted).

The plaintiffs attempt to resist the First Circuit's decision by suggesting in their First Amended Complaint that there is not, in fact, any House rule that precludes remote participation in House floor sessions. They contend, in essence, that the First Circuit (and by extension this Court) erred in concluding that Section 786 of the 2020 edition of *Mason's Manual* governs remote participation in floor sessions, as another section of *Mason's Manual* contemplates that "constitutional provisions and judicial decisions thereon" take precedence over rules contained in *Mason's Manual*. ECF Doc. No. 44 ¶ 33. They further contend that the New Hampshire Supreme Court's decision in *Opinion of the Justices* "specifically authoriz[ed] remote attendance in participation" in House floor sessions. *Id.* ¶¶ 32, 33. The plaintiffs believe that the *Opinion of the Justices* "trumps" Section 786. *Id.* ¶ 33.

These arguments face an obstacle right out of the gate: the plaintiffs could have made them (and at various points did) during the prior proceedings in this case. *See, e.g.*, *Cushing*, 560 F. Supp. 3d at 548 ("And while Plaintiffs argue that the House does not strictly enforce House Rule 65 or applicable rules from *Mason's Manual*, it is not the role of this federal court to pick and choose among competing understandings of the internal rules of a state legislative body."). The law-of-the-case doctrine "bars a party from resurrecting issues that either were, or *could have been*, decided on an earlier appeal." *Matthews*, 643 F.3d at 12 (citation and quotation marks omitted; emphasis added). Though the plaintiffs have filed a petition for writ of certiorari with the Supreme Court, they do not contend that the First Circuit erred in concluding that the acts they challenge are legislative in nature. Having had ample opportunity to advance these arguments previously, the plaintiffs must live with the First Circuit's decision. *See Matthews*, 643 F.3d at 12.

In any event, the arguments lack merit. It is well-established under both federal and New Hampshire precedent that the interpretation of the *meaning* of a parliamentary rule presents a nonjusticiable political question. In *Nixon v. United States*, for example, the U.S. Supreme Court declined to decide whether a Senate Rule governing impeachment proceedings violated the Impeachment Clause. *See* 506 U.S. 224, 226 (1993). More pertinently, the New Hampshire Supreme Court made clear in *Starr v. Governor* that "the legislature, *alone*, has complete control and discretion whether it shall observe, enforce, waive, suspend, or disregard its own rules of procedure." 154 N.H. 174, 178 (2006) (emphasis added). Furthermore, asking a federal court to declare how a state parliamentary rule operates is incompatible with the Eleventh Amendment. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 105–06. Thus, this Court lacks jurisdiction to the

extent the plaintiffs ask it to weigh in on how the New Hampshire House's parliamentary rules operate. *See Cushing*, 560 F. Supp. 3d at 548.

The plaintiffs will likely argue, as they have in the past, that the New Hampshire Supreme Court's decision in *Burt v. Speaker of the House of Representatives* holds otherwise. *See, e.g.*, ECF Doc. No. 20 at 9–10. This argument still has no merit. Nothing in *Burt* contemplates that any court (much less a federal court subject to Eleventh Amendment constraints) may declare *how* state rules of parliamentary procedure operate. To the contrary, the New Hampshire Supreme Court recognized in *Burt* that "courts generally consider that the legislature's adherence to rules and statutes prescribing procedure is a matter entirely within legislative control and discretion, not subject to judicial review *unless* the legislative procedure is mandated by the constitution." 173 N.H. 522, 526 (2020) (cleaned up; emphasis in original). The court thus drew a distinction between "claims regarding the legislature's compliance with such rule-based and statutory procedures," which "are not justiciable," and "claims regarding compliance with mandatory constitutional provisions," which "are justiciable." *Id.* (cleaned up). The court concluded that the constitutional challenge presented in *Burt* constituted the latter sort of claim, not the former. *See id.* at 523–24.

The defendants do not dispute for the purposes of this motion that the plaintiffs' claims are justiciable in the abstract to the extent the plaintiffs seek relief for purported violations of federal statutory and constitutional law. Of course, this has no bearing on whether those claims are nonetheless barred by legislative immunity under federal common law, a necessarily subsequent question that is in no way dependent on state law, *see Cushing*, 30 F.4th at 50, and was not addressed in *Burt* at all. But to the extent the plaintiffs seek to bind their claims to the *antecedent* question of whether the defendants are properly observing House parliamentary

procedure in the first place, then that question is plainly nonjusticiable under New Hampshire Supreme Court precedent. *Starr*, 154 N.H. at 178. A careful reading of *Burt* only confirms this point. *See* 173 N.H. at 526.

Ultimately, however, the plaintiffs' parliamentary procedure arguments would fail on the merits even if the law-of-the-case doctrine and justiciability were not impediments to reaching them. The plaintiffs premise those arguments on Section 4.2 of *Mason's Manual*, which sets an order of precedence for rules of parliamentary procedure. ECF Doc. No. 44 ¶ 33. The plaintiffs' reliance on Section 4.2 is curious, given that the New Hampshire House Rules already contain an order of precedence under which the House Rules take precedence over *Mason's Manual*. *See* House Rule 65(b), (d), *available at* https://www.gencourt.state.nh.us/house/aboutthehouse/houseRules.pdf. The plaintiffs presumably prefer the order of precedence in Section 4.2 of *Mason's Manual* because, unlike House Rule 65, it makes specific reference to "constitutional provisions *and judicial decisions thereon*," ECF Doc. No. 44 ¶ 33 (emphasis added), which the plaintiffs might feel provides a clearer path to the *Opinion of the Justices* on which they principally rely, *see id.* ¶¶ 32, 33. The defendants fail to see how this additional language matters, given that the New Hampshire Supreme Court is already the "final arbiter" when it comes to the "construction of constitutional provisions." *State v. Mack*, 173 N.H. 793, 801 (2020). Still, it is telling that the plaintiffs premise their argument that the defendants are incorrectly applying parliamentary procedure on their own clear misapplication of House Rule 65.[4]

Under House Rule 65, *Mason's Manual* controls House parliamentary procedure in the absence of a constitutional provision, House Rule, or custom, usage, or precedent to the contrary.

---

[4] That the plaintiffs base this misapplication at least in part on how three unnamed persons "associated with the National Conference of State Legislators [sic]" believe House parliamentary procedure should operate is equally telling. *See* ECF Doc. No. 44 ¶ 32.

House Rule 65(a)–(d), *available at* https://www.gencourt.state.nh.us/house/aboutthehouse/houseRules.pdf. The plaintiffs contend that the *Opinion of the Justices* takes precedence over Section 786 of *Mason's Manual* with respect to remote participation in House floor sessions. They anchor this contention in a belief that the that the *Opinion of the Justices* "specifically authoriz[es] remote attendance and participation of representatives" in House floor sessions. ECF Doc. No. 44 ¶ 33. To the extent the plaintiffs use the word "authorizes" to mean "requires," they overstate what the *Opinion of the Justices* actually says.

The *Opinion of the Justices* concerned a single, narrow issue: whether "holding a session remotely, either in whole or in part, whereby a quorum could be determined electronically, would not violate Part II, Article 20"—the provision of the New Hampshire Constitution governing House quorums. *See* 173 N.H. at 690–92. The court answered this question in the negative. *Id.* at 691. But in doing so, the court expressly declined to reach whether virtual participation in House proceedings might violate other provisions of the State Constitution. *See id.* The court further noted that "it is within the competency of the house to prescribe any method which shall be reasonably certain to ascertain the presence of a quorum," which the House could do under its constitutional authority "to adopt its own rules of proceedings." *Id.* at 699 (citing N.H. Const. pt. II, art. 22).

The *Opinion of the Justices* might generously be read for the proposition that "the New Hampshire Constitution d[oes] not *prohibit* remote participation by representatives in House proceedings." *Cushing*, 30 F.4th at 32 (citations omitted; emphasis added). But that does not mean that the State Constitution *requires* remote participation. There is nothing in the *Opinion of the Justices* that implies, let along imposes, such a requirement. Rather, having resolved the sole question before it, the New Hampshire Supreme Court left it to the House to determine,

consistent with its constitutional authority "to adopt its own rules of proceedings," the manner in which remote participation in House proceedings might occur. *Opinion of the Justices*, 173 N.H. at 699. The House's ultimate adoption of a default rule generally prohibiting remote participation in House floor sessions absent a vote to enact a more specific rule permitting such participation is wholly in keeping with the constitutional authority recognized in the *Opinion of the Justices*. *See id.* The plaintiffs' suggestion that such a default rule is "contrary" to the *Opinion of the Justices*, ECF Doc. No. 44 ¶ 33, is irreconcilable with what that decision actually says.

In a different tack, the plaintiffs seek to draw a distinction between the enactment of a rule of parliamentary procedure, which they appear to concede is a legislative act, and the execution or enforcement of such a rule, which they contend is purely administrative. Because the First Circuit already rejected this argument in its en banc decision, *see Cushing*, 30 F.4th at 49–50, the plaintiffs are foreclosed from reviving it now, *see Matthews*, 643 F.3d at 12. This argument is also foreclosed by *Harwood*, where the First Circuit concluded that "the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing [a] rule as part of their official duties." 60 F.3d at 631 (citations omitted). And it is likewise at odds with several other circuit court decisions that have declined to draw a distinction between the enactment of a parliamentary rule and its execution. *See McCarthy*, 5 F.4th at 40–41; *Reeder*, 780 F.3d at 800–01; *Consumers Union of U.S., Inc.*, 515 F.2d 1341, 1351 (D.C. Cir. 1975).

The D.C. Circuit's recent analysis of this issue in *McCarthy* is of particular note. There, the plaintiffs challenged a U.S. House resolution that allowed for proxy voting due to the pandemic. *McCarthy*, 5 F.4th at 36–37. In arguing that the Speech or Debate Clause did not bar their challenge, the plaintiffs sought "to draw a fundamental divide between the enactment of

legislation and the execution of it." *Id.* at 40. The court concluded that this argument did not

"withstand scrutiny," because "[t]he salient distinction under the Speech or Debate Clause is not

between enacting legislation and executing it," but rather "between legislative acts and non-

legislative acts." *Id.* at 41. The court emphasized that immunity under the Speech or Debate

Clause "encompasses the execution of legislation when the executing actions themselves

constitute legislative acts." *Id.* The court concluded that a resolution that "establishes internal

rules governing the casting of votes by Members" and "conduct implementing the . . . resolution"

is "itself a legislative act, pertaining directly to the consideration and passage or rejection of

proposed legislation" that "falls comfortably within the immunity afforded by the Speech or

Debate Clause." *Id.* at 41.

Drawing on this analysis, the First Circuit concluded in its en banc decision that "the

decision by the Speaker of the House to follow . . . rules for the manner of members'

participation in floor proceedings (including with respect to the casting of votes) was "a

'quintessential legislative act.'" *Cushing*, 30 F.4th at 53 (quoting *McCarthy*, 5 F.4th at 39). As

previously discussed, the plaintiffs seek the same relief in their First Amended Complaint that

they sought in their original complaint and their motion for a preliminary injunction.

Accordingly, the First Circuit's reasoning, even if it were not binding, has just as much force

now as it did with respect to the plaintiffs' request for a preliminary injunction. In light of that

decision, and the other decisions just discussed, the plaintiffs' attempts to distinguish between

the enactment and execution of the House Rules and Section 786 are misplaced.

**Motives of the defendants.** The plaintiffs also seek to sidestep legislative immunity by

impugning the motives of the Speaker, the Clerk, and the House as a legislative body for

adopting and executing Section 786 of *Mason's Manual*. *See, e.g.*, ECF Doc. No. 44 ¶¶ 32, 36,

37, 39, 40, 42, 43. They likewise suggest throughout their First Amended Complaint that the defendants are enforcing Section 786 solely to gain a "partisan advantage." *See, e.g.*, *id.* ¶¶ 40, 60, 75, 106, 158. Remarkably, the plaintiffs also imply—without so much as a shred of support—that the defendants' conduct contributed to the deaths of two of the original plaintiffs. *See id.* ¶¶ 8, 10. While the defendants intend to vigorously refute these inflammatory contentions if this case proceeds past the motion-to-dismiss stage, for present purposes they are little more than empty rhetoric.

The Supreme Court could not be clearer that a defendant's motives play no role in the legislative-immunity analysis. In *Tenney v. Brandhove*, the Supreme Court observed that legislative immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of a pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." 341 U.S. 367, 377 (1951). The Court emphasized "that it was not consonant with our scheme of government for a court to inquire into the motives of legislators . . . ." *Id.* The Court acknowledged that "[i]n times of political passion, dishonest and vindictive motives are readily attributed to legislative conduct and as readily believed." *Id.* at 378. The Court made clear, however, that "[c]ourts are not the place for such controversies," and that "[s]elf-discipline and the voters must [instead] be the ultimate reliance for discouraging or correcting such abuses." *Id.* The Court further cautioned that any judicial inquiry "should not go beyond the narrow confines of determining that a [challenged act] may fairly be deemed within [the legislature's] province." *Id.*

The Supreme Court reiterated and refined these observations in *Bogan*. The petitioners there had sought review of a determination by the First Circuit that a jury's findings with respect to the petitioners' motives when passing an ordinance demonstrated that their actions were not

legislative in nature. *Bogan*, 523 U.S. at 47–48. Tracing the history of legislative immunity, the Supreme Court emphasized that "it certainly cannot be argued that the motives of the individual members of a legislative assembly, in voting for a particular law, can be inquired into, and its supporters be made personally liable, upon an allegation that they acted maliciously toward the person aggrieved by the passage of the law." 523 U.S. at 50 (citation, quotation marks, and brackets omitted). The Court noted that the First Circuit "erroneously relied on the petitioners' subjective intent in resolving the logically prior question of whether their acts were legislative." *Id.* at 54. The Court made clear that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* The Court concluded that, "stripped of all considerations of intent and motive, petitioners' acts were legislative." *Id.* at 55.

*Tenney* and *Bogan* leave no doubt that the plaintiffs' motives-based contentions are nonstarters. If anything, the plaintiffs' invocation of partisanship only further demonstrates why legislative immunity applies in this case. *See Tenney*, 341 U.S. at 378; *see also Cushing*, 30 F.4th at 52 (observing that "[t]oo narrow a construction of [legislative immunity]" invites "warring sides in partisan state legislators' battles improperly enlisting federal judges to participate in them"). Thus, this argument, too, fails to save the plaintiffs' claims. The Court should reject any suggestion to the contrary.

**Kilbourn v. Thompson.** Finally, the plaintiffs seek to avoid dismissal by invoking the exception to legislative immunity contemplated in *Kilbourn v. Thompson*. They contend that the defendants "have deliberately created an extraordinary dilemma for the disabled—they can either place themselves and their families at an extreme risk of death, or they can forego participation in democratic institutions, thus leaving their constituents unrepresented." ECF Doc. No. 44 ¶ 42. While the plaintiffs suggest that this argument is based on "newly discovered facts and legal

developments," *id.* ¶ 41, it is in fact one they have been making since the inception of this case, *see, e.g.*, ECF Doc. No. 2-1 at 2 (arguing that "without the option of remote attendance, the Plaintiffs must choose between putting themselves at the risk of serious injury/death or leaving their constituents unrepresented in the legislature"). It is also an argument that the First Circuit definitively rejected in its en banc decision.

To be sure, the First Circuit noted that the plaintiffs' *Kilbourn*-based argument was "barely developed in the District Court or before the panel." *Cushing*, 30 F.4th at 50. The court further observed that the issue before it was narrow—whether this Court "erred in making the only ruling that [was challenged on] appeal: denying a request for emergency relief against the Speaker due to the Speaker's decision not to make the kind of accommodation with respect to House Rule 65 that the plaintiffs seek." *Id.* at 52. But the court went on to emphasize that:

- the circumstances of this case were readily distinguishable from the "acts of an extraordinary character" that the Supreme Court in *Kilbourn* suggested might fall beyond the scope of immunity, *id.* at 50–51;

- the fact that the plaintiffs' claims implicate important statutory rights did not mean that the *Kilbourn* exception applied, *id.* at 51;

- there was nothing extraordinary about the Speaker's "decision to follow— rather than depart from—existing House rules that were overwhelmingly passed and that were predicated on a general handbook for setting such rules for all legislatures generally," *id.*;

- the Speaker's conduct did not "target any class of legislators either expressly or through clever artifice," *id.*;

- "this case [was] distinct from *Powell v. McCormack*, 365 U.S. 486 (1969)," *id.*; and

- "[t]oo narrow a construction of [the] immunity—and one not sufficiently respectful of the high bar that *Kilbourn* plainly intended to set for stripping seemingly protected acts from the cover the immunity convers—invites abuses," including "federal judges improperly intruding into internal state legislative affairs" and "warring sides in partisan state legislators' battles improperly enlisting federal judges to participate in them," *id.* at 53.

None of the material the plaintiffs have added to First Amended Complaint undermines these observations. For the most part, the plaintiffs resort to "bald conclusions" and "unrelieved rhetoric," *Viqueira*, 140 F.3d at 15, regarding the defendants' motives, which, in addition to finding no support in anything approaching a well-pleaded fact, are irrelevant for the reasons previously stated. The plaintiffs otherwise try to avoid the First Circuit's discussion of *Kilbourn* by making assertions that are implausible on their face. They contend, for example, that National Conference of State Legislatures' decision to include Section 786 in the 2020 edition of *Mason's Manual*, and the House's subsequent adoption *Mason's Manual* as a parliamentary guide with overwhelming bipartisan support, was somehow a "'clever artifice' designed to discriminate against disabled Democratic legislators." ECF Doc. No. 44 ¶ 34.[5] Elsewhere, they contend that the equal application of a rule of parliamentary procedure generally precluding remote participation in House floors sessions unless the House votes otherwise is "really not fundamentally different from pointing a gun to the heads of the Individual plaintiffs to block them from entering the House." *Id.* ¶ 42.

But, again, the plaintiffs seek the same relief now that they have since the beginning of this case. The First Circuit concluded that this relief, when sought through the plaintiffs' request for a preliminary injunction, challenged the enactment and execution of a neutral rule of parliamentary procedure governing "the manner of members' participation in floor proceedings (including with respect to the casting of votes)." *Cushing*, 30 F.4th at 53. The First Circuit declined to "constru[e] *Kilbourn* in a manner that would deem such a 'quintessentially legislative

---

[5] Notably, the Clerk stated in his affidavit in support of the Speaker's objection to the plaintiffs' motion for a preliminary injunction that prior to the House's January 6, 2021 vote to adopt the 2020 version of *Mason's Manual* as a parliamentary guide, he "had provided the Republican and Democratic Leadership teams a detailed memo from the National Conference of State Legislatures showing the changes to the 2020 version of [*Mason's Manual*]," including "the addition of Section 786, titled 'Remote Participation in Floor Sessions.'" ECF Doc. No. 17-2 ¶ 12.

act'" as "beyond the protection of the immunity that has been historically afforded to such an act." *Id.* (quoting *McCarthy*, 5 F.4th at 39). Other courts have been similarly wary of finding the "mundane matter" of "accesses to the floors of [state legislative bodies]" outside of the scope of legislative immunity's protection. *Reeder*, 780 F.3d at 804.

None of the assertions in the First Amended Complaint, however strident they may be, converts the "quintessentially legislative" conduct that the plaintiffs actually challenge into the type of "act" of an "extraordinary character" that *Kilbourn* contemplated might not be afforded such protection. *Cushing*, 30 F.4th at 50; *see id.* at 50–51 (noting that "the Court in *Kilbourn* considered as a possibility, that 'members of [Congress could go] so far to forget their high functions and the noble instrument under which they act as to imitate the Long Parliament in the execution of the Chief Magistrate of the nation, or to follow the example of the French Assembly in assuming the function of a court for capital punishment'" (quoting 103 U.S. at 204–05)). Indeed, given the trajectory of the pandemic, including the now widespread availability of treatments and vaccinations, *see, e.g.*, *Pietrangelo v. Sununu*, 15 F.4th 103, 105–06 (1st Cir. 2021), this is now a far less "extraordinary" case than it was when the plaintiffs brought it. The plaintiffs' attempts to invoke *Kilbourn* are therefore unavailing. This Court should reject them.

## II.     The Court should dismiss the plaintiffs' state-law claims based on Eleventh Amendment immunity or otherwise decline supplemental jurisdiction over those claims.

The plaintiffs also assert two violations of the New Hampshire Constitution—one under Part I, Article 11 and one under Part I, Article 22. ECF Doc. No. 44 ¶¶ 146–159. The plaintiffs advance these claims despite facing arguments from this case's earliest stages that the Eleventh Amendment precludes a federal court from adjudicating causes of action premised on violations of state, rather than federal, law. *See* ECF Doc. No. 17-1 at 12–13; ECF Doc. No. 40 ¶ 12. This

principle is just as well-established now as it was when the plaintiffs filed their original complaint. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 121; *Courthouse New Serv. v. Quinlan*, 32 F.4th 15, 22 (1st Cir. 2022); *Doe v. Shibinette*, 16 F.4th 894, 903–04 (1st Cir. 2021). The Court should therefore dismiss the plaintiffs' state-law claims based on Eleventh Amendment immunity.

Alternatively, the Court should decline supplemental jurisdiction over the state-law claims. "[A] district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction." *Signs for Jesus v. Town of Pembroke, NH*, 977 F.3d 93, 114 (1st Cir. 2020) (citing 28 U.S.C. § 1367). Having dismissed the plaintiffs' federal claims based on absolute legislative immunity, the Court may properly decline supplemental jurisdiction over their state-law claims. This provides an alterative basis to dismiss those claims.

**Conclusion**

For the foregoing reasons, the Court should dismiss the plaintiffs' First Amended Complaint in its entirety.

Respectfully submitted,

Sherman Packard, in his official capacity as Speaker of the New Hampshire House of Representatives; Paul Smith, in his official capacity as Clerk of the New Hampshire House of Representatives; the New Hampshire House of Representatives; and the State of New Hampshire

By their attorney,

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY GENERAL

Dated: September 23, 2022          /s/ *Samuel Garland*
                                   Anthony J. Galdieri, No. 18594
                                   Solicitor General
                                   Samuel R.V. Garland, No. 266273
                                   Jennifer S. Ramsey, No. 268964
                                   Senior Assistant Attorneys General
                                   Civil Bureau
                                   (603) 271-3650
                                   anthony.j.galdieri@doj.nh.gov
                                   samuel.rv.garland@doj.nh.gov
                                   jennifer.s.ramsey@doj.nh.gov

### **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record using the

Court's electronic-filing system.

                                   /s/ *Samuel Garland*
                                   Samuel R.V. Garland