**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Representative Robert R. Cushing, et al., | \* |
| Plaintiffs, | \* |
| v. | \* Case No. 1:21-cv-00147-LM |
| Representative Sherman Packard, et al. | \* |
| Defendants. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY TO OBJECTION TO MOTION TO DISMISS

The defendants, by and through counsel, submit the following reply to the plaintiffs' objection to their motion to dismiss:

**A.   The State can properly invoke legislative immunity.**

The plaintiffs raise what are essentially two arguments for why they believe the State itself cannot invoke legislative immunity. First, the plaintiffs contend that legislative immunity is a personal immunity held by individuals, not an immunity that can be invoked by a governmental entity. *See* ECF Doc. No. 54-1 at 8–9. The First Circuit has already rejected this argument. The First Circuit observed that, "unlike some other common law immunities, legislative immunity may be asserted even against claims that seek only declaratory or prospective injunctive relief." *Cushing v. Packard*, 30 F.4th 27, 37 (1st Cir. 2022) (en banc). The First Circuit noted that legislative immunity may be invoked by state officials sued in their official capacities who stand in as proxies for the entities they serve and by governmental entities themselves. *See id.* at 42–43 (citing *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980)). The First Circuit's decision is binding on this Court and forecloses any argument that legislative immunity can only be invoked by individuals, not governmental entities.

The plaintiffs alternatively argue that legislative immunity is inapplicable because the State itself can be enjoined under Title II of the ADA and Section 504 of the Rehabilitation Act, and compliance with an injunction is a ministerial act. *See* ECF Doc. No. 54-1 at 9–15. This argument rests on an incorrect assumption that legislative immunity only protects against the burdens of complying with a judicial remedy. But as the First Circuit observed, legislative immunity "exists to protect to those engaged in legislative activities from the burdens of defending against a suit and not merely from being held liable in one." *Cushing*, 30 F.4th at 37. The burdens a suit like this pose on legislative officials do not suddenly disappear when the "Speaker of the New Hampshire House of Representatives" is replaced with "the State of New Hampshire" in a case caption. Like other immunities, legislative immunity should not be "sacrificed to the elementary mechanics of captions and pleadings." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997).

This is particularly so given that, as this Court previously noted, "a basic premise of legislative immunity is that it applies to acts, not actors." *Cushing v. Packard*, 560 F. Supp. 3d 541, 550 (D.N.H. 2021) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998)). Put differently, "[a]bsolute legislative immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 29 (1st Cir. 1996) (citations and quotation marks omitted; emphasis in original). The plaintiffs assert the same claims against all defendants, including the State of New Hampshire. They have not meaningfully changed the nature of their challenge or the relief they seek since the outset of this case. As the First Circuit observed, the plaintiffs' challenge concerns a "quintessentially legislative act" to which "protection of the immunity . . . has been historically afforded." *Cushing*, 30 F.4th at 53. Under the functional approach required by precedent,

legislative immunity attaches to "*all actions* taken in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (emphasis added)

In resisting this notion, the plaintiffs put the cart before the horse. Even if one accepts the dubious proposition that a court order, once entered, *always* creates a purely ministerial duty—a proposition the plaintiffs support solely with reference to an 1871 decision requiring that taxes be levied to pay a monetary judgment, *see Amy v. Supervisors*, 78 U.S 136 (1871), and a dissenting opinion from a 1990 case that addresses an issue the majority did not reach, *see Spallone v. United States*, 493 U.S 265, 291 (1990) (Stevens, J., dissenting)—this says nothing about whether the conduct at issue in the *underlying suit* is legislative in nature. As discussed above and elsewhere, precedent makes clear that the applicability of legislative immunity turns on the nature of the conduct challenged, and not the remedy imposed. *Bogan*, 523 U.S. at 54; *Consumers Union*, 30 F.4th at 732–34. If the converse were true, then legislative immunity would likely never be available on claims seeking damages remedies, as courts have long recognized that paying a court-imposed monetary judgment is a ministerial act.[1] It was essentially for this reason that the Supreme Court in *Bogan* distinguished the *Amy* case on which the plaintiffs now rely. *See Bogan*, 523 U.S. at 52–53 (noting that the conduct at issue in *Amy* was ministerial because it involved the enforcement of a monetary judgment already imposed). But even the plaintiffs acknowledge that legislators sued in their individual capacities for damages can properly invoke legislative immunity when the conduct challenged is legislative in nature. *See, e.g.* ECF Doc. No. 54-1 at 8–9 & n.2. The plaintiffs' focus on the act of complying

---

[1] *See, e.g.*, *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 662 F.3d 187, 195 (2d Cir. 2011) (concluding then when the defendant was under a legal obligation to reimburse the plaintiff, the "payment of the judgment is . . . a ministerial function"); *Arnold v. BLaST Intermediate Unit 17*, 843 F.2d 122, 129 (3d Cir. 1988) (ordering a district court to enter a writ of mandamus requiring the payment of a judgment on the basis that it is a ministerial act); *Tyer v. Hines*, 117 F.2d 782, 782 (D.C. Cir. 1941) (observing that "the payment of [a] judgment" requires "the performance of a ministerial act" (citing *Hines v. United States*, 105 F.2d 85, 93 (D.C. Cir. 1939)).

with a judgment after it has entered, rather than the conduct challenged in pursuit of that judgment, is accordingly misplaced.

The plaintiffs also fail to persuasively address a fundamental question the First Circuit raised in its en banc opinion: whether the State is a proper defendant in this case at all, "given that if the House were the proper entity (insofar as an officer suit was not brought) legislative immunity would have remained a viable defense." *Cushing*, 40 F.4th at 42. There are two potential answers to this question, and neither helps the plaintiffs. If the State of New Hampshire is a proper defendant, then this is only because the State is effectively an alter ego of the New Hampshire House of Representatives for the purposes of this lawsuit. But if that were true, then the plaintiffs offer no explanation for why governmental entities such as state legislative bodies can assert legislative immunity under the functional approach to legislative immunity controlling precedent requires, *see Cushing*, 40 F.4th at 42, but the State itself cannot. Alternatively, the State of New Hampshire may not be a proper defendant in this case at all, as the plaintiffs' claims are entirely concerned with conduct occurring within a single chamber of the state legislature that itself can be named as a defendant. Either way, the plaintiffs cannot evade legislative immunity through the "empty formalism" of naming the State of New Hampshire as a nominal defendant without regard to the conduct they actually challenge. *Cf. Coeur D'Alene Tribe of Idaho*, 521 U.S. at 270.

**B.     None of the "newly alleged" material identified in the plaintiffs' objection is sufficient to overcome absolute legislative immunity.**

The plaintiffs spend much of the remainder of their objection identifying what they characterize to be "newly alleged and discovered facts" that they say defeat legislative immunity. *See* ECF Doc. No. 54-1 at 16–21. The plaintiffs first contend that the defendants have not addressed either the addition of the House as a defendant or their assertion that the House's

receipt and use of federal funds "operates as a waiver of any defense." *Id.* at 17. But the defendants *have* directly addressed why, consistent with the First Circuit's decision, adding the House as a defendant does not affect the legislative-immunity analysis. ECF Doc. No. 51-1 at 8 (citing *Cushing*, 30 F.4th at 42). The plaintiffs offer no rebuttal in their objection. And the First Circuit has already expressly rejected the notion that "the New Hamsphire General Court's acceptance of federal funding effected a waiver" of legislative immunity. *Cushing*, 30 F.4th at 48–49. The plaintiffs' focus on these issues is unavailing.

The plaintiffs contend that the First Circuit misapplied the Section 786 of the 2020 edition of *Mason's Manual of Legislative Procedure* in reaching its decision. *See* ECF Doc. No. 54-1 at 19. The defendants have already explained why this contention is barred by the law-of-the-case doctrine, implicates a non-justiciable question, and is wrong on the merits even if it could be reached. *See* ECF Doc. No. 51-1 at 13–18. The plaintiffs cannot evade the defendants' arguments by characterizing the operation of Section 786 as a "newly discovered fact." ECF Doc. No. 54-1 at 19. Whether the law-of-the-case doctrine or justiciability doctrine applies presents a pure question of law. *See Ms. S. v. Reg'l Sch. Unit 72*, 916 F.3d 41, 47 (1st Cir. 2019) (law-of-the-case doctrine); *Hughes v. Speaker of the N.H. House of Representatives*, 152 N.H. 276, 283 (2005) (justiciability doctrine). So, too, would the construction of a legislative body's parliamentary rules, if this Court could reach that issue. *Cf. Appeal of Keith R. Mader 2000 Revocable Tr.*, 173 N.H. 362, 366 (2020) ("The interpretation of a rule, like the interpretation of a statute, presents a question of law . . . ."). This Court need not credit the plaintiffs' assertion as to how Section 786 operates when assessing these legal arguments. *See Bradley v. ARIAD Pharms.*, 842 F.3d 744, 750 (1st Cir. 2016) ("[Courts] need not credit the plaintiffs' legal conclusions or characterizations." (citations and quotation marks omitted)).

The plaintiffs' attempts to impugn the motives of the Clerk likewise do not help their cause. The plaintiffs contend that the Clerk used his position with the National Conference of State Legislatures to conspire to sneak Section 786 into the 2020 edition of *Mason's Manual* as a trojan horse that the Speaker could one day use for partisan gain. *See* ECF Doc. No. 54-1 at 18–19. The plaintiffs assert that this was all part of a "'clever artifice' designed to deprive disabled Democratic legislators of their ability to have meaningful participation in the legislature." *Id.* This narrative is, in essence, a conspiracy claim that is not pleaded anywhere in the plaintiffs' amended complaint. If this case survives dismissal, the Clerk is prepared to show that the narrative is demonstrably false.[2] Ultimately, however, the plaintiffs' focus on motives is a red herring, as the Supreme Court has made clear that motives play no role in the legislative-immunity analysis. ECF Doc. No. 51-1 at 19–21.

But even if motives were relevant, the conspiratorial narrative the plaintiffs spin would not come close to satisfying the plausibility standard for Rule 12 motions. When ruling on a motion to dismiss, a court must "take the complaint's well-pleaded facts as true" and "draw all *reasonable* inferences in the plaintiffs' favor." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (emphasis added). "Well-pleaded facts must be 'non-conclusory' and 'non-speculative.'" *Id.* (citation and quotation marks omitted). "Naked assertions devoid of further factual enhancement" are insufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

A review of the plaintiffs' 42-page, 159-paragraph amended complaint reveals at most three assertions that even arguably bear on their conspiratorial narrative: (1) that the Clerk was

---

[2] Indeed, the Clerk has already submitted an affidavit in this case stating that he "provided Republican and Democratic Leadership teams a detailed memo from the National Conference of State Legislatures showing the changes to the 2020 version of [*Mason's Manual*]," including "the addition of Section 786, titled 'Remote Participation in Floor Sessions'" before the House's January 6, 2021 vote to adopt the 2020 version of *Mason's Manual* as a parliamentary guide. ECF Doc. No. 17-2 ¶ 12.

"listed in the 2020 Mason's Manual of Legislative Procedure as a member of the Mason's Manual Commission which is charged with issuing new editions every ten years to reflect changes in laws and procedures," ECF Doc. No. 44 ¶ 17; (2) that Section 786 is a "new, not an existing, provision" contained in the 2020 edition of *Mason's Manual*, *id.* ¶ 36; and (3) that "[i]t is known that shortly before the adoption by the Revision Sub-Committee and subsequent adoption by the Mason's Manual Commission, one or more changes in the proposed section were made," *id.* ¶ 37. It is hard to conceive how these generalized, innocuous allegations could support *any* inference that the Clerk conspired to sneak Section 786 into the 2020 edition of *Mason's Manual* as part of a "'clever artifice' designed to deprive disabled Democratic legislators of their ability to have meaningful participation in the legislature." ECF Doc. No. 54-1 at 18–19. Such an inference is certainly not reasonable based anything alleged in the amended complaint. *Barchock*, 886 F.3d at 48. Rather, this whole misguided narrative—which serves only to harm the reputation of a dedicated, nonpartisan public servant—reflects the type of bald speculation bereft of any well-pleaded factual support that courts need not entertain. *See Iqbal*, 556 U.S. at 678; *Barchock*, 886 F.3d at 48.

This is particularly true when considering that the Clerk is a constitutional officer elected by the members of the House under Part II, Article 22 of the New Hampshire Constitution and N.H. Revised Statutes Annotated § 14:2-b. He was first elected as Clerk in 2014 with bipartisan support. N.H.H.R. Jour. No. 1 (Dec. 3, 2014) at 46.[3] He has since been *unanimously* reelected four times, including on December 7, 2022, nearly six months *after* the plaintiffs filed their amended complaint and nearly two years after they first initiated this case. N.H.H.R. Jour. No. 1 (Dec. 7, 2016) at 7; N.H.H.R. Jour. No. 1 (Dec. 5, 2016) at 8; N.H.H.R. Jour. No 1 (Dec. 2, 2020) at 6; N.H.H. R. J. No. 1 (Dec. 7, 2022) at 7. The Court may properly consider these facts,

---

[3] New Hampshire House Journals are available at https://gencourt.state.nh.us/house/calendars_journals/.

*see Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017), and they further dispel any notion that the Clerk anything but a dedicated public service.

The plaintiffs also contend that the Clerk is not entitled to legislative immunity because he is not a legislator. *See* ECF Doc. No. 54-1 at 17–18. The plaintiffs concede that *National Association of Social Workers v. Harwood*, 69 F.3d 622 (1st Cir. 1995), forecloses this argument, but contend that this Court should disregard *Harwood* because it is contrary to the Supreme Court's earlier decision in *Powell v. McCormack*, 395 U.S. 486 (1969). *See* ECF Doc. No. 54-1 at 17–18. The plaintiffs fail to acknowledge, however, that the Supreme Court contemplated three years after *Powell* that the protections of the Speech or Debate clause *can* extend to legislative aides. *See Gravel v. United States*, 408 U.S. 606, 617 (1972). They also fail to acknowledge that the *Harwood* majority itself explained why *Powell* did not foreclose the conclusion that legislative aides can invoke legislative immunity. *See Harwood*, 69 F.3d at 633–34. The Court should not accept the plaintiffs' invitation to ignore binding precedent.

Similarly unavailing is the plaintiffs' suggestion that this Court can require the House to permit remote participation in floor sessions because their amended complaint "makes it clear that the Senate continues to meet remotely because it is authorized under the New Hampshire Constitution." ECF Doc. No. 54-1 at 19. This statement is true only insofar as the New Hampshire Constitution "contain[s] textually demonstrable commitments to the House and Senate to adopt their own rules of proceedings." *Hughes*, 152 N.H. at 284 (citation and quotation marks omitted). Through that constitutional authority, the Senate has *affirmatively adopted* a parliamentary rule allowing for remote participation in Senate sessions under certain circumstances. *See* 2023-2024 N.H.S. Rule 2-33, *available at* https://www.gencourt.state.nh.us/senate/about_senate/senate_rules.pdf. The House has charted a different course. The plaintiffs

- 8 -

point to nothing in the State Constitution that divests the House of its authority to adopt its own rules, including its own voting procedures, and in doing so determine for itself whether to allow for remote participation in House business. By drawing attention to the fact that the Senate used its own constitutionally prescribed authority to address remote participation by *enacting a rule*, the plaintiffs only undermine their position.

Finally, while the defendants have explained why the circumstances of this case are not of a sufficiently "extraordinary character" to overcome legislative immunity, ECF Doc. No. 51-1 at 21–24, it bears noting that the plaintiffs filed their objection nine days after the House adopted its 2023-2024 House Rules. *See* 2023-2024 N.H.H.R. Rules, *available at* https://gencourt.state.nh.us/house/aboutthehouse/houseRules.pdf. Once again, the House adopted the 2020 edition of *Mason's Manual* as a parliamentary guide and the same order of precedence that existed in the rules governing the 2020 session. See N.H.H. Rules 10 & 65. It did so in a voice vote. *See* N.H.H.R Jour. No. 1 (Dec. 7, 2022) at 16. The House also considered and rejected proposed rule amendments that would have allowed members who are "unable to attend session due to medical condition, illness, or illness in the family" to vote by proxy, N.H.H.R. Jour. No. 2 (Jan. 4, 2023) at 14–16, and would have permitted committees and subcommittees to meet virtually, *id.* at 16–18. Sixteen members of the Democratic Caucus voted against the first proposal, *see* General Court of New Hampshire Roll Calls, 2023 Roll Call Votes, House Rule 22, Jan. 4, 2023, *available at* https://www.gencourt.state.nh.us/nhgcrollcalls/rollcallsbyvotedetail.aspx, and ten voted against the second, *id.*, House Rule 31, Jan. 4, 2023, *available at* https://www.gencourt.state.nh.us/nhgcrollcalls/rollcallsbyvotedetail.aspx. These developments, which the plaintiffs do not mention in their objection, further demonstrate that this case concerns the ordinary exercise of a "quintessentially legislative act," *Cushing*, 30 F.4th at 53, not conduct akin to "pointing a gun to

the heads of the Individual plaintiffs to block them from entering the House," as the plaintiffs remarkably assert in their amended complaint. ECF Doc. No. 44 ¶ 42.

**C.      The plaintiffs' arguments with respect to their state-law claims are without merit.**

The plaintiffs contend that the Eleventh Amendment does not bar their state-law claims because those claims fall within this Court's supplemental jurisdiction under 28 U.S.C. § 1367 and because the New Hampshire legislature and individual legislators can be subject to suit in state court. ECF Doc. No. 54-1 at 21–22. The Supreme Court has expressly held that "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting states," *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541–42 (2002), and that "[a] State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) (citation and quotation marks omitted). The plaintiffs' arguments to the contrary are without merit.

The plaintiffs also argue, without any meaningful elaboration, that their state-law claims survive because the defendants' actions were "*ultra vires* and Eleventh Amendment immunity does not apply." ECF Doc. No. 54-1 at 22. Even assuming this argument is sufficiently developed for judicial review, the plaintiffs offer no explanation for how the defendants—which include the House, the Speaker, and the Clerk—lacked *any* authority to promulgate and enforce rules of parliamentary procedure when the New Hampshire Constitution itself "contain[s] textually demonstrable commitments to the House and Senate to adopt their own rules of proceedings." *Hughes*, 152 N.H. at 284 (citation and quotation marks omitted).

**D.      Conclusion**

For the above-stated reasons, and those set forth in the defendants' underlying motion, the Court should dismiss the plaintiffs' amended complaint.

Respectfully submitted,

Sherman Packard, in his official capacity as Speaker of the New Hampshire House of Representatives;

Paul Smith, in his official capacity as Clerk of the New Hampshire House of Representatives;

The New Hampshire House of Representatives; and

The State of New Hampshire

By their attorney,

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY GENERAL

Dated: January 30, 2023

/s/ *Samuel Garland*
Anthony J. Galdieri, No. 18594
Solicitor General
Samuel R.V. Garland, No. 266273
Senior Assistant Attorney General
Civil Bureau
(603) 271-3650
anthony.j.galdieri@doj.nh.gov
samuel.rv.garland@doj.nh.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record using the Court's electronic-filing system.

/s/ *Samuel Garland*
Samuel R.V. Garland