UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Robert R. Cushing, et al.

    v.

Sherman Packard, in his official capacity
as Speaker of the House for the
N.H. House of Representatives, et al.

Civil No. 21-cv-147-LM
Opinion No. 2023 DNH 113 P

**O R D E R**

The plaintiffs, several members of the New Hampshire House of Representatives[1] and the New Hampshire Democratic Party, have sued New Hampshire House Speaker Sherman Packard, the House Clerk, the House itself and the State of New Hampshire. Plaintiffs allege that the defendants violated Section 504 of the Rehabilitation Act (codified at 29 U.S.C. § 794), Title II of the Americans With Disabilities Act (codified at 42 U.S.C. §§ 12131-12134), and the State and Federal Constitutions when they refused to allow remote attendance and voting in response to the COVID-19 pandemic, despite the plaintiffs' health and predisposition to serious illness. Presently before the court is the defendants' motion to dismiss (doc. no. 51) the plaintiffs' Amended Complaint (doc. no. 44). See Fed. R. Civ. P. 12(b)(6). The court is not writing on a clean slate, having previously denied

---

[1] The original individual plaintiffs were Robert "Renny" Cushing, David Cote, Kenneth Snow, Katherine Rogers, Paul Berch, Diane Langley and Charlotte DiLorenzo. Plaintiffs Cushing and Rogers have passed away since the filing of the original complaint. Doc. no. 44 ¶¶ 8, 10. Recent elections have left only plaintiffs Cote and DiLorenzo as House members. Doc. no. 54-1 at 19-20.

the plaintiffs' motion for a preliminary injunction. Cushing v. Packard, 560 F. Supp 3d. 541 (D.N.H. 2021) ("Cushing I"). In an en banc decision, the First Circuit Court of Appeals affirmed the denial of injunctive relief. Cushing v. Packard, 30 F.4th 27 (1st Cir. 2022) cert. denied, 143 S. Ct. 308 (2022) ("Cushing II"). In its en banc affirmance, the Court of Appeals provided a roadmap that this court is duty-bound to follow. As set forth more fully below, that map leads the court to grant defendants' motion.

## PROCEDURAL HISTORY

Concurrent with their filing of a complaint against Speaker Packard seeking a permanent injunction (doc. no. 1), the plaintiffs moved for a preliminary injunction. Doc. no. 2. In his objection, the Speaker, then the only defendant, argued, among other things, that plaintiffs' claims were barred by the doctrine of absolute legislative immunity. Doc. no. 17-1. Following an expedited hearing, this court denied plaintiffs' request for immediate relief. See Cushing I. The court concluded that the Speaker "is immune from plaintiffs' suit challenging his enforcement of a House rule that is closely related to core legislative functions." Id. at 548.

The plaintiffs appealed that decision to the First Circuit. An appellate panel vacated this court's decision, holding that Title II and Section 504 abrogate legislative immunity. See Cushing v. Packard, 994 F.3d 51 (1st Cir. 2021). The court then granted the Speaker's motion for rehearing en banc. See Cushing II, 30 F.4th at 30. The full court accepted additional briefing, including an amicus brief

filed by the United States — upon the First Circuit's invitation — in support of the plaintiffs' position.  Following oral argument, the First Circuit issued a divided en banc decision affirming the denial of the preliminary injunction.  See id. at 30 (majority opinion); id. at 53 (Thompson, J., dissenting).

Rejecting each argument plaintiffs put forth for why legislative immunity did not bar their claims against the Speaker, the Court of Appeals ultimately held that this court did not err in denying the plaintiffs' motion for a preliminary injunction based on that immunity.  Id. at 53.  The gist of the majority's conclusion was that plaintiffs challenged a "quintessentially legislative act" to which "protection of the immunity . . . has been historically afforded."  Id. (citation and quotation marks omitted).

Following remand, the Speaker moved to dismiss plaintiffs' original complaint based on the reasoning in the First Circuit's en banc decision.  Doc. no. 40.  Plaintiffs then moved, with the Speaker's assent, to amend their complaint.  Doc. no. 42.  The Amended Complaint names three additional defendants — Paul Smith in his official capacity as Clerk of the New Hampshire House, the New Hampshire House of Representatives, and the State of New Hampshire.  Doc. no. 44 ¶¶ 1, 17-19.  The Amended Complaint is otherwise factually similar to the original.  In addition to the new defendants, plaintiffs also assert new legal theories — under the First and Fourteenth Amendments to the United States Constitution and others

3

under Part I, Articles 11 and 22 of the New Hampshire Constitution. See id. ¶¶ 152-159.[2]

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted). Generally, the court may consider only the facts alleged in the complaint, exhibits attached to the complaint, and other materials that are fairly incorporated in the complaint or are subject to judicial notice such as matters of public record. Lowe v. Mills, 68 F.4th 706, 713-14 (1st Cir. 2023); see Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013).

## DISCUSSION

The court will not rehash the details of its prior order or that of the Court of Appeals. Nor will it restate the facts already set forth in those decisions. See Cushing II, 30 F.4th at 31-35; Cushing I, 560 F. Supp. 3d at 544-46. Instead, guided by the binding en banc decision of the Court of Appeals, the court first outlines the contours of legislative immunity and then addresses the claims against each defendant.

---

[2] Part 1, Article 11 of the New Hampshire Constitution guarantees free elections to inhabitants of the state 18 years old and older. Article 22 guarantees free speech and freedom of the press.

4

I.        <u>Legislative Immunity</u>

The Supreme Court has long held that "legislative immunity is an analogue to the Speech and Debate Clause of the federal Constitution that reflects the importance that Anglo-American law traditionally has placed on protecting 'legislators acting within their traditional sphere' from being subject to suit." Cushing II, 30 F.4th at 36 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). "This 'privilege' from suit is 'indispensabl[e]' to 'enable and encourage a representative of the public to discharge his public trust with firmness and success.'" Id. (quoting Tenney, 341 U.S. at 373). Ultimately, the Court of Appeals noted, the reason to keep government officials "immune from deterrents to the uninhibited discharge of their legislative dut[ies is] not for their private indulgence but for the public good." Id. (alteration in original) (quoting Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency, 440 U.S. 391, 405 (1979). The court also recognized that legislative immunity, unlike other forms of immunity, may be asserted even where, as here, plaintiffs seek only declaratory or prospective injunctive relief. Id. at 37 (citing Sup. Ct. of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 732 (1980)).

II.       <u>House Speaker Packard</u>

As previously noted, Speaker Packard was the only defendant named in the plaintiffs' original complaint. In affirming this court's denial of plaintiffs' motion for a temporary injunction, the court in Cushing II held that legislative immunity can thwart plaintiffs' claims under the ADA and Rehabilitation Act. Id. at 43. This

5

court is bound by that finding. See Latin Am. Music Co. v. Media Power Grp., Inc., 705 F.3d 34, 40 (1st Cir. 2013) ("[u]nless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.") (quoting Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997)).

The Court of Appeals next rejected plaintiffs' claim that denying them the opportunity to participate by remote means was not a "legislative act" to which legislative immunity applies. Cushing II, 30 F. 4th at 49. As such, and regardless of the new legal theories added to the amended complaint, all federal claims against Speaker Packard – including the constitutional claims added in the amended complaint[3] must be dismissed because the Speaker is immune from suit.

III. House Clerk Smith

Although he is not a legislator, plaintiffs' claims against House Clerk Smith are also barred by legislative immunity. As previously noted, the doctrine protects state legislators from liability for "legislative acts." Consumers Union, 446 U.S. at 732. As this court found in denying plaintiffs' request for temporary injunctive relief, "even members of the executive or judicial branch may be entitled to legislative immunity for acts taken in legislative capacities." Cushing I, 560 F. Supp. 3d at 547-48. The First Circuit's decision in Nat'l Ass'n of Workers v.

---

[3] See Massie v. Pelosi, 72 F.4th 319, 323-24 (D.C. Cir. 2023) (observing that claims that legislative immunity does not extend to the enactment and enforcement of House rules that are allegedly unconstitutional "have been 'rejected time and again' because immunity from suit is 'absolute' as to legislative acts.") (quoting Rangel v. Boehner, 785 F.3d 19, 24 (D.C. Cir. 2015)).

Harwood, 69 F.3d 622 (1st Cir. 1995), forecloses the possibility of relief against Clerk Smith.  The plaintiffs in Harwood sued the Rhode Island House Speaker and the House Doorkeeper, seeking to prevent them from enforcing a House rule banning lobbyists and lobbying on the House floor while the House was in session. Id. at 624-25. The First Circuit held that both the Speaker and the Doorkeeper were immune from plaintiffs' suit under the doctrine of legislative immunity.  See id. at 635. The court reasoned that "because the applicability of the Speech or Debate Clause necessarily focuses on particular acts or functions, not on particular actors or functionaries, the prophylaxis of the Clause also extends to legislative acts performed by non-legislators."  Id. at 630 (citing Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 507 (1975) (refusing to draw a distinction between the members of a congressional subcommittee and the subcommittee's counsel when the latter's actions were within the sphere of legitimate legislative activity), and Gravel v. U.S., 408 U.S. 606, 618 (1972) (holding that "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself")).

Plaintiffs' claims against Clerk Smith fit squarely within the binding framework of Harwood.  Plaintiffs argue that Harwood is not controlling because it conflicts with the Supreme Court's decision in Powell v. McCormick, 395 U.S. 486 (1969), in which the United States House of Representatives refused to permit a duly-elected House Member "to take his seat."  Id. at 489.  The Court permitted relief imposed against a House employee, not a legislator.  Id. at 504-06.  But the

7

majority of the appellate panel in Harwood rejected a similar argument set forth by the dissenting judge:

> We do add, however, our belief that the dissent seriously misconstrues the Court's Speech or Debate Clause jurisprudence beyond all recognition. To the extent that Powell v. McCormack can be read to hold that legislative immunity does not extend to legislative employees, the Court in later cases has routinely confined it to its unique facts . . . . Moreover, the decision not to extend legislative immunity to congressional employees in cases such as Powell turned on whether "relief could be afforded without proof of a legislative act or the motives or purposes underlying such an act," thereby avoiding impermissible encroachment on "legislative independence."

Harwood, 69 F.3d at 633 (citations omitted). The court therefore finds plaintiffs' attempts to avoid Harwood's application unavailing.

Two recent cases stemming from the COVID-19 pandemic arising in the United States House of Representatives underscore the point. In Massie, supra, n.3, members of Congress sued the House Speaker, Sergeant-at-Arms, and Chief Administrative Officer challenging the constitutionality of the House's face mask mandate, which included fining Members for violations. The court held that the adoption and execution of the mandate were "legislative acts," and the defendants were therefore immune from suit under the Speech and Debate Clause of the Constitution. 72 F.4th at 323. In so holding, the court rejected the plaintiffs' contention that execution of a House resolution was not subject to immunity in the same way that adoption and ratification would be. Id. The court observed that "the salient distinction under the Speech or Debate Clause is not between enacting legislation and executing it," but rather "between legislative acts and non-legislative acts." Id. (quoting McCarthy v. Pelosi, 5 F.4th 34, 39 (D.C. Cir. 2021)).

8

Massie relied in large part on McCarthy, in which several House members challenged the constitutionality of a House rule allowing proxy voting. 5 F.4th at 38-39. As particularly relevant here, both the McCarthy and Massie courts applied the Speech and Debate Clause in part because "the House adopted its rules for proxy voting under its power to 'determine the Rules of its Proceedings.'" Massie, 72 F.4th at 322-23 (quoting McCarthy, 5 F.4th at 39-40 (quoting U.S. Const. art. I, § 5, cl. 2)). The Massie court concluded that the mask mandate, like the proxy voting rule at issue in McCarthy, "was a rule of proceeding committed to the jurisdiction of the House. And, like the proxy voting rule, it regulates the conduct of Members on the House floor. Therefore, its adoption was a legislative act protected by the Speech or Debate Clause." 72 F.4th at 323 (footnote omitted).

So it is here. The rules governing remote participation are legislative acts regulating conduct on New Hampshire's House floor. Those executing such acts — including Clerk Smith — are entitled to assert legislative immunity. The federal constitutional and statutory claims against Clerk Smith are therefore dismissed.

IV.   New Hampshire House of Representatives

Next, in their Amended Complaint, plaintiffs added the New Hampshire House of Representatives as a defendant. Doc. no. 44 ¶ 18. In Cushing II, however, the Court of Appeals, while not explicitly ruling on an issue applicable to defendants not yet before it, indicated that Consumers Union "expressly states that a legislative body may itself assert legislative immunity." Cushing II, 30 F.4th at 42 (citing Consumers Union, 446 U.S. at 732). In Consumers Union, the Court held

9

that in its role of promulgating a Code of Professional Responsibility for attorneys, the Virginia Supreme Court acted in a legislative capacity and could therefore invoke legislative immunity to defeat a suit challenging rules against attorney advertising. 446 U.S. at 734-35. Accordingly, the First Circuit specifically suggested that "if the House were the proper entity (insofar as an officer suit was not being brought) legislative immunity would have remained as a viable defense." Id. (citing Consumers Union, 446 U.S. at 732). Even if the First Circuit's observation is considered dicta, the court finds it persuasive. The New Hampshire House was unquestionably acting in a legislative capacity. As this court observed in Cushing I, "a basic premise of legislative immunity is that it applies to acts, not actors, 560 F. Supp. 3d at 550 (citing Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998). Against this backdrop, and the fact that other courts have applied legislative immunity to non-individuals performing "legislative acts,"[4] plaintiffs' claims against the New Hampshire House of Representatives are dismissed.

---

[4] See, e.g., Macintyre v. Supreme Ct. of Colorado, No. 120CV03559CNSSKC, 2023 WL 4346887, at *5 (D. Colo. Apr. 20, 2023), report and recommendation adopted, 2023 WL 4230603 (D. Colo. June 28, 2023) ("It is well-settled that a state court "and its members are immune from suit when acting in their legislative capacity," such as by promulgating "rules of general application [that] are statutory in character." ); Doe v. Supreme Ct. of Kentucky, 482 F. Supp. 3d 571, 583 (W.D. Ky. 2020) (finding that legislative immunity, protects the Supreme Court of Kentucky from a challenge to its promulgation of bar admission rules).

V.       State of New Hampshire

The Court of Appeals also addressed the possibility of the State of New Hampshire as a defendant, as plaintiffs asserted on appeal that they had sued the state, by naming the Speaker in his official capacity. Cushing II, 30 F.4th at 40-42. Although the Court of Appeals rejected plaintiffs' legal contention, it made several observations that led it comfortably to conclude that defendants' motion to dismiss must also be granted as to the State.

First, the Court of Appeals noted that plaintiffs, although contending that they had sued the State, cited no "authority to support the contention that a suit that merely names the State but then seeks such equitable relief against a state legislative officer and no other actor or entity is not a suit to which legislative immunity applies." Id. at 37 n.9. This suggests to this court, as it hypothesized in Cushing I, that the State can properly interpose a legislative immunity defense. 540 F. Supp. 3d at 550. If, as the First Circuit said in Cushing II, the House can invoke legislative immunity, and, as the Court in Consumers Union found, other institutional defendants acting in a legislative capacity can assert the defense, then it follows that, under the facts alleged in this case, the State can do so here.

The Court of Appeals also questioned whether the State was a proper party at all, given that the injunctive relief sought "must run against a legislator directly to be effective." Cushing II, 30 F.4th at 49. The court noted that, in the context of this litigation, the House was a separate entity from the State, rather than, for example, an agency or department that would not have a "separate identity" from

11

the State. Id. at 42 n.14. As the court stated, "had the plaintiffs named the State in their complaint, a question would then have arisen in relation to the relief sought as to whether the right entity had been named, . . . ." Id. at 42.

The Court of Appeals's observations, therefore, lead this court to two alternate paths to granting the defendants' motion. First, the State can assert legislative immunity to the same extent the House of Representatives can. Second, plaintiffs' allegations do not implicate the State as a separate entity at all, and therefore fail to state a claim for relief. Accordingly, the motion to dismiss is granted as to the State.

VI.  "Extraordinary Character"

In Kilbourn v. Thompson, 103 U.S. 168 (1880), the Supreme Court noted an exception to legislative immunity for "things done . . . of an extraordinary character, for which the members who take part in the act may be held legally responsible." Id. at 204; see also Harwood, 69 F.3d at 634 ("[T]here may be some conduct, even within the legislative sphere, that is so flagrantly violative of fundamental constitutional protections that traditional notions of legislative immunity would not deter judicial intervention."). The Court of Appeals in Cushing II explained that:

> Kilbourn made quite clear that standard for an "act" to be deemed of "extraordinary character" is a most demanding one. In fact, in sketching out the high bar a legislative act would need to clear before being deemed an act of "extraordinary character," such that a legislator could be sued for it, the Court in Kilbourn considered, as a possibility, that "members of [Congress could go] so far to forget their high functions and the noble instrument under which they act as to imitate the Long Parliament in the execution of the Chief Magistrate of the nation, or to follow the example of the French Assembly in assuming the function of a court for capital punishment." 103 U.S. at 204-05. In the event

12

> legislators engaged in conduct so clearly exceeding the powers delegated to them, the Court – quite understandably – was "not prepared to say that such an utter perversion of their powers to a criminal purpose would be screened from punishment by the constitutional provision for freedom of debate." Id.

30 F.4th at 50. The Court of Appeals ultimately declined to apply the "extraordinary character" exception to "the Speaker's decision not to make the kind of accommodation with respect to House Rule 65 that the plaintiffs seek." Id. at 52.

Consistent with the allegations in their original complaint, plaintiffs allege that defendants have forced them to "either place themselves or their families at an extreme risk of death, or they can forego participation in democratic institutions . . . ." Doc. no. 44 ¶ 42. The plaintiffs further allege that Clerk Smith played a nefarious role in having section 786 of Mason's Manual — which proscribes remote attendance — inserted into the 2020 edition of the Manual, which the House voted to guide its procedures in January 2021.[5] Essentially, they allege that the Clerk used his position on the Mason's drafting committee to insert section 786 into the manual for the improper motive of depriving plaintiffs of their rights, although plaintiffs provide little elaboration beyond the fact that Smith was on the committee. Doc. no. 54-1 at 18. The court is not persuaded that plaintiffs' piling of inference atop inference amounts to a "clever artifice" that would satisfy the significant burden Kilbourn places upon them. See Cushing II, 30 F.4th at 51.

And although the First Circuit acknowledged that the record before it was "barely developed," id. at 50, the Circuit's findings are both relevant and persuasive.

---

[5] The specifics of this allegation are in their objection to the instant motion, doc. no. 54-1, rather than the Amended Complaint.

Most importantly, the Circuit found that the circumstances of this case simply were not of "the extraordinary character" within the meaning of Kilbourn. Id. at 50-51. Next, the Circuit observed that the admittedly important statutory and constitutional rights that plaintiffs are seeking to vindicate are not sufficient reasons, standing alone, to satisfy the Kilbourn standard. Id. at 51. The Court of Appeals also relied on the fact that plaintiffs are challenging conduct that involves a decision to follow – rather than depart from – existing House rules that were overwhelmingly passed and that were predicated on a general handbook for setting such rules for all legislatures generally. Id. at 51. The conduct was not, the Circuit noted, targeting a class of legislators. Id. The Circuit also provided a cautionary coda:

> Too narrow a construction of that immunity — and one not sufficiently respectful of the high bar that Kilbourn plainly intended to set for stripping seemingly protected acts from the cover the immunity confers — invites abuses of its own. Those abuses may involve not only federal judges improperly intruding into internal state legislative affairs but also warring sides in partisan state legislators' battles improperly enlisting federal judges to participate in them. See E.E.O.C. v. Wash. Suburban Sanitary Comm'n, 631 F.3d 174, 181 (4th Cir. 2011) ("As members of the most representative branch, legislators bear significant responsibility for many of our toughest decisions . . . . [Legislative immunity] shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box."). We do not suggest that any such effort by the plaintiffs is at play here, and we appreciate the seriousness of the health threat that this virus poses. We do emphasize, though, that the immunity exists not merely to protect against the fact of such enlistment in a given case but also to protect against the possibility of that enlistment in a future case.

Cushing II, 30 F.4th at 52-53. In the end, this court must "be wary of construing Kilbourn in a manner that would deem even such a 'quintessentially legislative act,'

14

see Pelosi, 5 F.4th at 39, as the decision . . . to follow these rules for the manner of members' participation in floor proceedings (including with respect to the casting of votes) to be beyond the protection of the immunity that has been historically afforded to such an act." Cushing II, 30 F.4th at 53. Accordingly, the court declines to apply the Kilbourn exception to the defendants' claims of immunity.

VII. State Constitutional Claims

Plaintiffs' amended Complaint includes claims under Part 1, Articles 11 and 22 of the New Hampshire constitution. Defendants urge the court to dismiss these claims based on the State's Eleventh Amendment immunity. Doc. no. 51-1 at 24-25. Plaintiff's object to dismissal on those grounds, alleging that the immunity does not apply because defendants were acting beyond the scope of their authority. Doc. no. 54-1 at 22. The court's jurisdiction over these claims rests on 28 U.S.C. § 1367, which confers supplemental jurisdiction over state law claims that relate to federal law claims. Generally, "[w]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Although this case has a relatively long procedural history, it has, in fact, only reached the motion to dismiss stage in this court. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit,

15

well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). The court therefore declines to exercise supplemental jurisdiction and dismisses plaintiffs' state constitutional claims without prejudice to refiling in state court.

## CONCLUSION

The court is not unsympathetic to plaintiffs' legitimate concerns. But it cannot base its decision on whether it agrees with the procedures voted upon by the New Hampshire House of Representatives. Based on the foregoing, the defendants' motion to dismiss (doc. no. 51) plaintiffs' Amended Complaint is granted. The dismissal of plaintiffs' state constitutional claims is made without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 11, 2023

cc: Counsel of Record.